Thompson can be made good, by the formal waiver of notice given in this case by Hollis Thompson, after the proceedings commenced, even if jurisdiction could be given to the com missioners by consent of parties. We are not to assume, merely because it is so averred in the petition, that the two individuals were partners, or that there was any outstanding partnership debt. Charles Thompson had a right to be heard, and *non constat*, if he had had the notice the law requires, that he would not have contested both those allegations, and contested them successfully.

*All proceedings vacated and superseded.*

CHARLES THOMPSON, JR., *vs.* HOLLIS THOMPSON & others.

One partner, after a dissolution of the partnership, may commence proceedings in insolvency under *St.* 1838, *c.* 163, § 21, by his sole petition, so as not only to affect his own property and the property of the firm, but also the separate property of his late partners.

The term "insolvency," as used in the insolvent laws, does not mean an absolute inability of the debtor to pay his debts, at some future time, upon a settlement and winding up of all his affairs, but a present inability to pay in the ordinary course of business.

Before the issuing of a warrant in insolvency against a partnership, on the petition of one partner, notice to the other partners, though not prescribed by law, may be required by the commissioner, in his discretion; and any partner not so notified may apply to this court, under *St.* 1838, *c.* 163, § 18, to suspend and vacate the proceedings, on showing that the partnership is not insolvent, and that there was no foundation for the allegation of insolvency, on which the proceedings were instituted.

Where proceedings in insolvency, instituted against a partnership, on the petition of one partner, without previous notice to his copartners, are suspended by this court, on the application of a partner not so notified, the case will be referred to a master to inquire and report as to the truth of the statements upon which the proceedings were commenced, before making a final decision.

THIS was a proceeding by petition under the equitable jurisdiction of the court in matters of insolvency. The petition was dated December 9th, 1848, and filed on the 14th of January, 1849.

The petitioner, Charles Thompson, Jr., set forth, that in the year 1840 he entered into a copartnership in trade with

Charles Thompson and Hollis Thompson, under the firm of C. & H. Thompson and company, which continued until the 25th of January, 1848, when it was dissolved by mutual consent, and a notice of the dissolution was signed by the parties, and published ; that after such dissolution, the petitioner formed a copartnership in trade with Hollis Thompson, 2d, and Samuel Thompson, his brothers, which has ever since continued ; that Hollis Thompson, senior, has for many years been a copartner in trade with Charles Thompson, senior, under the firm of C. & H. Thompson ; that, on the 8th of November preceding the date of the petition, a warrant was issued by Daniel W. Alvord, esquire, commissioner of insolvency for the county of Franklin, declaring the insolvency of Charles and Hollis Thompson, and directing a messenger to take possession of their property, and appointing a meeting of their creditors on the 5th of December following, at which time a meeting was held, and an assignee chosen of the joint and separate goods and property of the said Charles and Hollis, which assignee has since accepted the trust; that, on the 6th of the same December, Hollis Thompson, senior, presented a petition to the commissioner of insolvency, setting forth therein that he was then one of the partners in the firm of C. & H. Thompson and company, which was insolvent; that he wished to surrender the joint and separate property of the same, and of the individual partners thereof for the benefit of creditors, and to obtain a discharge from his debts, and praying that a warrant might issue accordingly ; that, upon this petition, the commissioner issued a warrant, dated the same day, directed to Thomas R. M'Gee, one of the respondents, as messenger, by whom a part of the personal property of the petitioner was seized, and who demanded the household furniture and books of the petitioner, and announced his intention to take the same, in pursuance of such warrant; that the allegation of Hollis Thompson, in his said petition, that the firm of C. & H. Thompson and company were unable to pay their debts in full was untrue; that no action was then pending against them for any debt; that the said

firm could pay their own debts out of their own assets, and that the petitioner had property enough to pay all their debts and his own also; that he was ready and believed himself to be able to give satisfactory security for every debt for which he was liable as a partner of the firm of C. & H. Thompson and company, and that the proceedings instituted against him by Hollis Thompson were oppressive and illegal.

The prayer of the petition was, that an order might be passed enjoining the said Hollis Thompson, Daniel W. Alvord and Thomas R. M'Gee from prosecuting the last-mentioned proceedings in insolvency, or interfering in any way with the property of the petitioner, or of the firm of C. & H. Thompson and company, and that all the proceedings by the commissioner and messenger, under the petition against said last-mentioned firm, be vacated and annulled.

The commissioner of insolvency, Alvord, one of the respondents, demurred, and the petitioner joined in demurrer.

*G. T. Davis,* for the petitioner.

1. The partnership being dissolved, Hollis Thompson had no power to put the firm into insolvency. *St.* 1838, *c.* 163, § 21, speaks of persons who "are," not who have been, "partners." *Claflin* v. *Beach,* 4 Met. 392; *Barclay* v. *Phelps,* 4 Met. 397; *Moritz's Case,* 5 Law Rep. 325; *Parker* v. *Muggridge,* 5 Law Rep. 351, 359; *Ayer* v. *Brastow,* 5 Law Rep. 498.

2. Hollis, being himself already insolvent, could not make this application, for all his rights had passed to his assignee. Coll. Part. §§ 853, 854, 875; *Butts* v. *Bilke,* 4 Price, 240.

3. The petitioner was entitled to notice under *St.* 1844, *c.* 78, § 9. *Buck* v. *Sayles,* 9 Met. 459.

4. If this court shall be made satisfied, that the allegation that the partnership was insolvent was not true, they will grant relief under their equity powers in a case like this.

*D. W. Alvord,* for himself.

1. One partner may put the firm into insolvency, even

after a dissolution. Coll. Part. §§ 118, 119, 546; *Washburn* v. *Goodman*, 17 Pick. 519, 537; *Carter* v. *Holbrook*, 3 Cush. 331; 3 Kent, 57; *Darling* v. *March*, 9 Shep. 184, 190; *Morse* v. *Bellows*, 7 N. H. 549.

2. If the former proceedings were void from the beginning, they could have no effect on these proceedings.

3. *St.* 1844, *c.* 78, applies only to involuntary proceedings.

SHAW, C. J. This case presents a question, which, though it has been often alluded to, we believe has not been directly decided, namely, whether, after the dissolution of a partnership agreed on and published, one partner can by his own petition commence proceedings under the insolvent laws, so as not only to affect his own property and the property of the firm, but also the separate property of his late partners.

In the opinion of the court, by the true construction of the statute, (*St.* 1838, *c.* 163, § 21,) each partner has that power. It is true, that after a dissolution, neither of the partners can bind the firm, by any new contract; the power given by each to the other, for this purpose, being revoked by a dissolution. But for the purpose of adjusting and liquidating concerns already existing, the collection of debts, disposal of property, payment of partnership debts and the like, the relation of partners continues. They are the owners of the partnership property, and joint debtors and joint creditors, in the same manner as before the dissolution. The insolvent law, in all its operations, regards such past joint concerns only; and all the reasons which relate to the application of these provisions to the case of partners, before dissolution, apply with equal force to their relations after dissolution; the purpose in both cases being to make payment of partnership debts from partnership assets, if sufficient, otherwise to make an equal distribution of the assets amongst the creditors. And the provisions of the statute appear to us to be adapted to such a case. The statute requires that the messenger shall take possession not only of the joint property, but also of the separate property.

Thompson *v.* Thompson & others.

If it be objected, that it is contrary to the principles of co-partnership, to enable a partner to charge the separate property of his copartner, we think it is a sufficient answer to say, that the proceeding in question only brings within the operation of the law those funds which are by law liable for the payment of partnership debts. Each partner is by law liable for the payment of the whole debts; and if the joint property is insufficient, such debts are a charge upon the separate property of each partner. By the statute, therefore, in order to effect a final and complete settlement of the partnership affairs, which both the partners and their creditors have an interest in effecting, and which it is the obvious policy of the insolvent law to accomplish, the separate property of each partner must be brought within the reach of the law. But the statute itself takes care that this shall ultimately work no injustice, by directing the assignee to keep separate accounts, and by first applying partnership property to pay partnership debts, and separate property to pay separate debts. The result of this system is, that if the separate property of either partner is more than sufficient to pay his separate debts, the balance shall go, as it ought, to pay his partnership debts. And so, on the other hand, if the partnership effects are more than sufficient to pay the joint debts in full, each partner's share in such partnership effects shall go, as it ought, to the discharge of his private debts. This results from that general principle of law, that as between partners and their creditors, each partner is liable to pay the whole of the partnership debts, without regard to their relative interests as between themselves; and, also, that the whole of each individual debtor's interest in property, whether it consist in separate property, or in his share of the stock of a partnership, is liable for the payment of his separate debts.

It sometimes happens, that a man of ample means enters into copartnership with a young man without property, or of small means, and after transacting business some time, they dissolve and give notice of such dissolution. The partnership, as such, may be embarrassed, perhaps insolvent, while the wealthy partner is amply able to pay all its debts,

and have a large property beyond.   If it be supposed a hardship, that the insolvent partner should have it in his power, by his separate act, to place the whole of the real and personal property of his former partner under sequestration, it appears to us that a satisfactory answer is found in the principles above stated.   Such former partner is by law bound to the payment of the partnership debts immediately, as well out of his separate property, as out of partnership property. The partnership creditors are not bound to await the slow and uncertain liquidation of the partnership affairs, the collection of debts, the getting in of property, and the process of winding up an embarrassed concern.   The solvent partner may relieve himself from the trouble of such sequestration, simply by doing his duty, paying these debts, and looking to the partnership funds for his indemnity.   And whether the funds are sufficient to indemnify him or not, is not the concern of the creditor; the loss will ultimately fall, where it ought to fall, on the solvent partner.

If it be asked, at what time after a dissolution this power of one partner to petition in behalf of the partnership, and place the firm in insolvency, shall cease, it appears to us that the answer in each case must be found in the state of the partnership concerns.   By the provision of the insolvent law before cited, § 21, a warrant may be issued in the manner provided in the act, either on the petition of such partners, or of any one of them.   The partners, or one of them, shall apply " in the same manner," &c.   By this we are referred to the first section of the act, which provides that any debtor, residing in this commonwealth, who shall desire, &c., may apply, &c., setting forth his inability to pay all his debts, his willingness to assign, &c., and praying that such proceedings may be had, &c.   And if it shall appear to the satisfaction of the judge, that the debts due from such applicant amount to $500, (since reduced to $200,) he shall forthwith, by warrant under his hand and seal, appoint, &c.   This indicates the course to be pursued, *mutatis mutandis*, when the application is made by partners, or by one of them in behalf of the partnership.   The petition must show, that debts due from

them, the partners, are not less than $200; and it must set forth their inability to pay them, their desire to obtain a discharge, and their willingness to assign. These are the facts, and this the case, in which alone the proceedings can be instituted; and so long as this state of things continues, there seems to be no good reason why a commission should not issue to reach their joint property, and also the property liable for the partnership debts, namely, the separate property of all the partners.

One ground, on which the petitioner prays that the proceedings may be suspended, deserves consideration, which is, that he had no notice of the application of his former partner, before the warrant issued. This is not a case where the statute has, in terms, required that notice shall be given. The statute provides, in terms, for the case of the voluntary application of the debtor, and of course there is no occasion for notice to him. The next case is the application of partners; and if made by all of them, notice to them is of course equally unnecessary. The case of one partner applying in behalf of himself and partners, is put on the same ground, without special provision, probably because such is the mutual duty, interest and relations of partners, that the act of one may be deemed in effect the act of all. We think, therefore, that notice not being provided for by the statute as a legal preliminary, is not a condition, the want of which will avoid the proceedings. But, at the same time, as the proceedings may deeply affect the rights of such partners, the court are of opinion, that it would be quite competent for the commissioner, in the just exercise of his powers, to give such notice before issuing his warrant against such partners, because they have a deep interest in being heard upon two questions of fact, on which the commissioner must pass, namely: 1. Whether the party so named in the applicant's petition is a copartner; and, 2. Whether the firm is insolvent. If these facts do not appear, the case does not exist, upon which the commissioner is authorized by the statute to proceed. But when this is not done, the court are of opinion, that such a partner is a party aggrieved, who may, in a proper case,

apply to this court, under the provisions of *St.* 1838, *c.* 163, § 18, to suspend and vacate the proceedings and have the property restored, upon showing that the partnership is not insolvent, and that there was no foundation in fact for the allegation of insolvency, on which the proceedings were instituted.  By the term "insolvency," however, as used in these statutes, we do not understand an absolute inability to pay one's debts at some future time, upon a settlement and wind ing up of all a trader's concerns; but a trader may be said to be in insolvent circumstances, when he is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do.  *Bayly* v. *Schofield*, 1 M. & S. 338 ; *Shone* v. *Lucas*, 3 D. & R. 218.

If this demurrer is withdrawn, we think the proper course will be to refer the case to a master, to inquire and report as to the truth of the facts or statements upon which these proceedings were commenced, and to reserve a final decision until such report shall be made.