### In re BERTENSHAW.

(Circuit Court of Appeals, Eighth Circuit. November 19, 1907.)

#### No. 83.

1. BANKRUPTCY — INSOLVENT FIRM — INDIVIDUAL ESTATE OF UNADJUDICATED SOLVENT PARTNER NOT SUBJECT TO ADMINISTRATION UNDER.

A partnership was adjudicated bankrupt, but none of the partners was adjudged a bankrupt. Application was made to the court to order an unadjudicated partner to turn over his property to the trustee of the partnership estate for administration in bankruptcy. *Held*, the court of bankruptcy was without jurisdiction to summarily take and administer in the proceedings against the partnership the individual estate of the solvent partner without his consent.

2. SAME—PARTNERSHIP DISTINCT ENTITY UNDER ACT OF 1898—TRUSTEE TAKES PARTNERSHIP PROPERTY ONLY—DISTINCTION BETWEEN ACT OF 1898 AND ACT OF 1867 AND INSOLVENCY LAW OF 1838.

Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], a partnership is a distinct entity, a person separate from the partners who compose it. It owns its property and owes its debts apart from the individual property of its members which it does not own, and apart from the individual debts of its members which it does not owe. It may be adjudged bankrupt, although the partners who compose it are not so adjudicated.

The trustee of the estate of a bankrupt partnership is not the trustee of the individual property of the unadjudicated partners and has no more

right to administer that property than he has to administer the property of indorsers of the commercial paper of the firm, or the property of sureties for its debts.

He is not the trustee or the assignee of the claims of the partnership creditors nor their agent or attorney to collect those claims out of other than the partnership property, and, where no partner is adjudged bankrupt, he has no power to enforce such claims against any property, except the partnership property or against any unadjudicated partner or other person who has none of the partnership property.

Under Act March 2, 1867, c. 176, 14 Stat. 517, and the Massachusetts Insolvency Law of 1838 (Laws 1837–38, p. 449, c. 163), a partnership was an aggregation of partners and the insolvency or bankruptcy of the partners conditioned the bankruptcy of the partnership. It is not so under the act of 1898, and therefore many of the rules of law applicable under the former acts do not obtain under the latter.

3. SAME—RIGHTS OF CREDITORS AGAINST UNADJUDICATED PARTNERS—EFFECT OF DISCHARGE OF PARTNERSHIP.

The partnership creditors may pursue unadjudicated partners by actions at law and suits in equity before, during, and after the proceedings in bankruptcy against the partnership.

The discharge of the partnership where the partners are not adjudicated bankrupt does not discharge the partners from their liability for the partnership debts.

4. SAME—PARTNERSHIP INSOLVENT IF PARTNERSHIP PROPERTY INSUFFICIENT TO PAY PARTNERSHIP DEBTS.

Under the Act of 1898 a partnership is insolvent if the partnership property is insufficient to pay the partnership debts, because it is a person (section 1 [19] c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3419]), because any person is insolvent under that act whose property is insufficient to pay its debts (section 1 [15]), and the only property a partnership has or can convey or apply to the payment of its debts is partnership property, and the only debts it owes are the partnership debts.

Hook, Circuit Judge, dissenting.

(Syllabus by the Court.)

## On Petition for Review.

On November 13, 1905, the court below found that B. F. Masterman, C. C. Surber, and Charles Joyce, doing business as the Opera House Drug Company, made an assignment for the benefit of their creditors, and upon that ground alone "adjudged that said B. F. Masterman, C. C. Surber, and Charles Joyce, partners doing business as the Opera House Drug Company, be adjudged bankrupts," and added: "It is further ordered that this adjudication binds only the partnership entity and not the partners as individuals." None of the partners was found to be insolvent or adjudged to be bankrupt. The trustee chosen by the creditors of the partnership collected the partnership property, converted it into money, and paid the expenses of the proceedings. He then had remaining $213.35 to be distributed among the creditors and the indebtedness of the partnership to them was $4,180.66. Thereupon he filed a petition in the court below for an order upon C. C. Surber, one of the partners, that he should turn over to him certain real estate which did not belong to the partnership and which he owned individually, to be applied to the payment of these debts. Surber answered that this real estate was his individual property, that he had not been and was not insolvent, and that he had not been adjudged a bankrupt. The referee found the facts to be as Surber alleged, and denied the prayer of the petition, on the ground that the real estate of an unadjudicated solvent partner was not subject to administration in bankruptcy upon a simple adjudication of the partnership and the court upon a proper certificate affirmed this ruling. The trustee presents this decision for revision and reversal by a petition under section 24b of the bankruptcy law. Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

Willard W. Padgett, William P. Dillard, and William M. Banks, for petitioner.

Joseph B. Tomlinson, Austin M. Keene, and Edward C. Gates, for respondent.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The adjudication in bankruptcy in this case is a distinct judgment that the partnership is a bankrupt, and that none of the partners is a bankrupt. This decision has not been challenged by appeal, those issues are now res adjudicata, and the only question here is, may the bankruptcy court in the administration of the estate of a bankrupt draw to itself and apply to the payment of partnership creditors individual property of solvent partners, none of whom has been adjudged a bankrupt?

There are two conceptions of a partnership, one springing from the agreement on which it is founded, that it is an aggregation of persons associated together to share its profits and losses, owning its property, and liable for its debts. The other that it is an artificial being, a distinct entity separate in estate, in rights, and in obligations from the partners who compose it. In most of its relations to persons and things the latter conception is the more accurate. The Supreme Court of Vermont in 1878, in Walker v. Wait, 50 Vt. 668, 676, declared that:

"A partnership or joint-stock company is just as distinct and palpable an entity in the idea of the law, as distinguished from the individuals composing it, as is a corporation; and can contract as an individualized and unified party, with an individual person who is a member thereof, as effectually as a corporation can contract with one of its stockholders. The obligation and the liability, inter partes, are the same in the one case as the other. The only difference is a technical one, having reference to the forum and form of remedy."

Judge Cooley in Robertson v. Corsett, 39 Mich. 784, said in the same year:

"The partnership for most legal purposes is a distinct entity, having its own property capable of contracting separate debts, having the right to sue in equity its several members, and to be protected against their conduct to the same extent that it might be against the conduct of strangers."

Judge Brewer, now Mr. Justice Brewer of the Supreme Court, said in 1876 in Cross v. National Bank, 17 Kan. 340:

"Where one joins a partnership, as in this case, he makes himself a part of an entity already existing, which has acquired certain property and business and in acquiring it has incurred certain indebtedness. The firm owns the property, holds the business, and owes the debts."

Thus it may be seen that the conception of the partnership as a distinct entity, separate in estate and obligations from each of the partners and from the individual estates and obligations of each partner, was an established and approved legal conception years before the act of 1898 was passed. Congress embodied this conception of a partnership in the bankruptcy law of 1898 by these clear provisions:

Section 1 (19):

" 'Persons' shall include corporations, except where otherwise specified, and officers, partnerships and women." Act. July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3419.]

Section 5:

"Partners. (a) A partnership, during the continuance of the partnership business, or after its dissolution and before the final settlement thereof, may be adjudged a bankrupt.

"(b) The creditors of the partnership shall appoint the trustee; in other respects so far as possible the estate shall be administered as herein provided for other estates.

"(c) The court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of all the partners and of the administration of the partnership and individual property.

"(d) The trustee shall keep separate accounts of the partnership property and of the property belonging to the individual partners.

"(e) The expenses shall be paid from the partnership property in such proportions as the court shall determine.

"(f) The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership.

"(g) The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates.

"(h) In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt." 30 Stat. 547, 548, c. 541 [U. S. Comp. St. 1901, p. 3424].

No express provision can be found in this legislation and no indication or implication is perceived in it that an adjudication of a partnership draws into the administration of its estate in the court of bankruptcy the property of the solvent partners who are not adjudged bankrupts. On the other hand, every provision of it is consistent with the retention and administration of their individual property by the unadjudicated partners, and many of them are utterly inconsistent with the administration of these individual estates by the bankruptcy court. Clause "c" provides that the court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of all of the partners and of the administration of the partnership and individual property. The unavoidable inference is that the court of bankruptcy, which does not have jurisdiction of any of the partners, cannot have jurisdiction of all of the partners and of the administration of both the partnership and the individual property. Nor is the reason for this provision difficult to perceive. Section 5 treats exclusively of bankrupt partnerships and their members. It does not deal with solvent partnerships that have committed no act of bankruptcy, nor does it subject partnerships to adjudication in bankruptcy solely because some of their members have

been adjudged bankrupts. A member of a partnership may be adjudged bankrupt when the partnership cannot be, and in such a case the bankruptcy court has no jurisdiction of the partnership property. But where one of the partners is adjudged bankrupt and the court thus acquires jurisdiction of him, the partnership is dissolved, and, if the partnership also is adjudged bankrupt, the bankruptcy court is given jurisdiction by clause "c" of the partnership and of all its members, because it then becomes necessary to marshal the properties and the liabilities of the partnership and its members, and to distribute the proceeds of the properties among the creditors in accordance with the equitable rule recited in clause "f." The provision of clause "c" simply gives to a court of bankruptcy which has jurisdiction of one of the members of a partnership adjudged bankrupt the same jurisdiction to administer the estate of the partnership and of its members which a court of equity would have in similar circumstances. A court of equity in such circumstances would not take the partnership property from the solvent partners, and clause "h" imposes upon the bankruptcy court this salutary rule of the equity practice. It provides that the property of the partnership and its administration shall not be taken from the unadjudicated partners by reason of the insolvency or bankruptcy of their fellows and of the partnership. It declares that although the partnership and one or more, but not all, of the members of it, are adjudged bankrupts, and the court thus has jurisdiction of them, nevertheless "the partnership property shall not be administered in bankruptcy unless by consent of the partner or partners not adjudged bankrupt."

If the property of a bankrupt partnership cannot be administered by the court of bankruptcy without the consent of the solvent partner who has not been adjudged bankrupt, a fortiori the latter's individual property cannot be. A court which cannot administer the property of a partnership adjudicated a bankrupt cannot by virtue of its jurisdiction over this partnership property, which it may not administer or touch, draw to itself and administer the individual property of the solvent partner without whose consent it may not administer the partnership property.

Hence, when clauses "c" and "h" are read and construed together, they provide, in effect, that when a partnership and one or more of the partners, but not all of them, are adjudged bankrupt, those who are not so adjudged may administer the partnership property and a fortiori their individual property, and the court may not do so without their consent, but, if the unadjudicated members consent, the court may administer the partnership property and their individual estates. These provisions thus interpreted are fair, just, and reasonable. The solvent partner cannot in any event escape payment of the debts of the partnership. His individual property is subject to attachment, execution, and to all the ordinary processes of the law to satisfy them. He is more competent to manage the individual property and the property of his firm which he had the shrewdness and ability to accumulate, more competent to convert them into money and to apply them upon his obligations, than any trustee chosen by his creditors can be. He knows the property, its value, its availability for various uses, its

market. He has a vital interest in securing the best price for it, and the fact that it is his property, that it is to be applied to his debts, gives him a preferential equity to apply it speedily and efficiently to the payment of his obligations. The opposite practice would be unreasonable, unfair to those who have accumulated, and preserved the property and liable to much injustice. A solvent partnership may be adjudged a bankrupt. West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098. Suppose a partnership owes $5,000, and one of the partners has individual property free from individual debts and subject to execution, of the value of $50,000, and the partnership makes a general assignment and is adjudged a bankrupt. Why should not the solvent partner administer the partnership property and his own and pay the partnership debts free from the delay and expense of a trustee? Why should the trustee of the estate of the partnership take from him his property of the value of $50,000, or any part of it, and proceed to convert the partnership estate and the individual property alike into money and to distribute it according to the provisions of clause "f"? If the solvent partner is willing to proceed speedily and efficiently to convert this property into money and to pay the partnership debts, no sound reason for taking it from him occurs to us. The provisions of section 5 demonstrate the fact that none occurred to the Congress and the common and approved practice in equity is otherwise. The Congress enacted the provision that the partnership property, and by more persuasive inference the individual property of the solvent partner, should not be administered in bankruptcy without his consent, to prevent such a practice.

A "partnership" is a "person." Section 1 (19). A "person," a "partnership," is insolvent when the aggregate of its property is insufficient at a fair valuation to pay its debts. Secton 1 (15). A partnership owns its own property, and owes its own debts. It, its property, and its debts are separate and distinct from the individuals who compose it, from their individual property and from their individual debts. The partnership does not own, cannot assign, or apply to the partnership debts, the individual property of its members, nor is it liable for their debts. The most that a creditor of a partner can secure from a partnership or from its property is the excess of the latter after the partnership debts have been paid. The partners and their individual property are to a limited extent, to the extent of the excess of their individual property over their individual debts, but not to the full extent of ordinary indorsers or indemnitors, sureties for the debts of the partnership. The act of 1898 recognized these patent facts, and provided for separate adjudications of the partnership and of its members. Under this act the partnership may make an assignment or commit some other act of bankruptcy and be adjudged a bankrupt while many of its members are solvent and cannot be so adjudged. On the other hand, some of its members may be adjudged bankrupts while the partnership is not subject to such an adjudication.

Where a partnership is adjudged bankrupt and the members of the partnership are not, the trustee takes title to the partnership property and to that only, and his full duty is discharged and all the power which he has is exercised when he collects and converts the partner-

ship property into money and distributes its proceeds among the creditors. The creditors of the partnership may subject the individual property of the unadjudicated partners to the payment of their debts before during or after the bankruptcy proceedings, by actions at law, by suits in equity or by other proceedings, just as they may the property of indorsers upon the commercial paper of the firm or the property of sureties for its obligations. But the trustee of the estate of the partnership is neither the assignee nor trustee of the claims of its creditors, nor their attorney nor agent to collect their claims out of the individual property of the unadjudicated partners, and he has no more right or authority at law or in equity to seize their individual property and to apply it to the payment of the partnership creditors than he has to take the property of indorsers of the firm paper or the porperty of sureties for its obligations and apply such property to that purpose. He is merely the trustee of the property of the partnership, not of the individual property of the partners, nor of the property of any other debtors of the creditors of the partnership, and he is without power to take or to administer such property. Nor may he maintain any action or proceeding to enforce the liability of the individual partners to the partnership creditors, because he is not the assignee of the claims of the creditors of the partnership and he has no more right or authority than a stranger to enforce these claims against other persons than the bankrupt partnership or against other property than the property of the partnership.

Moreover, since the property of the unadjudicated partners does not vest in and may not be administered by the trustee of the bankrupt partnership, the discharge of the partnership discharges that entity only from its debts, and leaves the partners still subject to their liability to pay the unpaid balance of the claims of the partnership creditors. The reason of the case and the plain provisions of the bankruptcy law alike forbid the court of bankruptcy to draw to itself and administer the individual property of unadjudicated partners upon a mere adjudication of the bankruptcy of their partnership.

This conclusion has not been reached without a careful examination of the insolvency law of Massachusetts from which clause "f" of section 5 is practically copied, of the bankruptcy law of 1867, and of a cloud of decisions under the present law. But these statutes have yielded little aid, and the decisions are so numerous and various that after deliberation the terms of the act of 1898 and their evident meaning seem to furnish the most reliable guide to a proper judgment. The Massachusetts act was an insolvency law. Laws Mass. 1837–38, p. 449, c. 163. It gave to any debtor who was unable to pay his debts the right upon filing a petition in court to surrender his property to be applied to the payment of his debts. It adopted the theory that a partnership was an aggregation of partners, and not the conception of the act of 1898 that it is an entity distinct from them. It provided that "where two or more persons who are partners in trade become insolvent, a warrant may be issued in the manner provided in this act, either on the petition of such partners or of any one of them, or on the petition of any creditor of the partners; upon which warrant all the joint stock and property of the company, and also all the separate estate of

each of the partners, shall be taken, excepting such parts thereof as may be by law exempted from attachment; and all the creditors of the company, and the separate creditors of each partner, shall be allowed to prove their respective debts," and that the proceeds of the respective estates should be distributed as directed by section "f" of the act of 1898. Laws Mass. 1837–38, p. 475, c. 163, § 21. The bankruptcy law of 1867 adopted the same theory. It provided:

"Where two or more persons who are partners in trade shall be adjudged bankrupt, either on the petition of such partners, or any one of them, or on the petition of any creditor of the partners, a warrant shall issue in the manner provided by this act, upon which all the joint stock and property of the co-partnership, and also all the separate estate of each of the partners, shall be taken." Act March 2, 1867, c. 176, 14 Stat. 534, § 36.

Under the Massachusetts insolvency law of 1838 and the bankruptcy law of 1867, it was the insolvency or bankruptcy of the partners, not specified acts of bankruptcy of the partnership, that conditioned the adjudication of the partnership, and in either case where the partners were insolvent or bankrupt the partnership was judicable and all the property of the firm and of the individual partners became subject to the administration in the court of bankruptcy by the express declaration of the acts. The question arose under the Massachusetts law whether or not the property of the partnership and of a solvent partner could be taken and administered by the court on the petition of insolvent partners, and, after at first intimating that they might be (Thompson v. Thompson, 58 Mass. 127, 132), the Supreme Judicial Court of the commonwealth finally said:

"Of the four objections made to the validity of the proceedings the first only has presented any difficulty. That is, that it was not alleged in the petition that the partners, in their individual capacity, were insolvent. A preliminary question was made whether such allegation was necessary. We cannot doubt that there must be a substantial averment of this fact; for, if one of the partners were solvent, such solvent partner would have the legal right of settling the affairs of the partnership, and the commissioner would have no power to take by his warrant the partnership property out of his hands. Again, as each partner is liable in solido for the debts of the company, a partnership cannot with strictness be said to be insolvent while any of the partners are able to pay its debts." Hanson v. Paige, 69 Mass. 239, 242.

If the court under the Massachusetts law, which treated the partnership as an aggregation of partners and not as a distinct entity, and which contained no express provision that the partnership property should not be administered in the court without the consent of the solvent partner, had no power to take the partnership property from a solvent partner and administer it, much less can it lawfully do so under the bankruptcy act of 1898, which treats the partnership as a distinct entity separate from the partners, and contains an express provision that its property may not be administered in bankruptcy without the consent of the solvent partner. And, if the court of bankruptcy has no power to administer the partnership property without the consent of the unadjudicated partner, much less may it draw to itself and administer his individual property.

The decisions under the act of 1898 concerning the relations of partnership and individual estates have not been overlooked, but upon

many phases of these relations they are confusing and inconsistent. The uniform current of authority is that under this act a partnership is a distinct entity separate from the individuals who compose it, that it owns its property and owes its debts, which are respectively separate and distinct from the individual property and the individual debts of its partners, and that an adjudication of the partnership a bankrupt apart from, or in addition to, the adjudication of its partners bankrupts, is indispensable to the jurisdiction of a court of bankruptcy to administer the partnership property. In re Mercur, 122 Fed. 384, 388, 58 C. C. A. 472, 476; In re Stein & Co., 11 Am. Bankr. Rep. 536, 538, 127 Fed. 547, 62 C. C. A. 272; In re Corcoran, 12 Am. Bankr. Rep. 283, 287; In re Sanderlin (D. C.) 109 Fed. 857, 859; In re Meyer, 98 Fed. 976, 979, 39 C. C. A. 368, 371; Strause v. Hooper (D. C.) 105 Fed. 590; In re Farley (D. C.) 115 Fed. 359, 361; In re Meyers (D. C.) 96 Fed. 408; Id., 97 Fed. 757; In re Russell (D. C.) 97 Fed. 32; Green River Deposit Bank v. Craig (D. C.) 110 Fed. 137; In re McFaun (D. C.) 96 Fed. 592; In re Barden (D. C.) 101 Fed. 553; In re Hale (D. C.) 107 Fed. 432.

There are many decisions that a partnership is not insolvent within the meaning of the act of 1898, unless all its members are insolvent. Vaccaro v. Security Bank, 103 Fed. 436, 43 C. C. A. 279; In re Perley & Hays, 15 Am. Bankr. Rep. 54, 56, 138 Fed. 927; In re Blair (D. C.) 99 Fed. 76, 79; Davis v. Stevens, 4 Am. Bankr. Rep. 763, 772, 104 Fed. 235; In re Forbes, 11 Am. Bankr. Rep. 787, 791, 128 Fed. 137. The reason given for the latter proposition is that the creditors of the firm may have recourse to the remainder of the individual property of the partners after the individual debts are paid. But this is the only recourse such creditors could have and the same reasoning would more cogently persuade that the bankruptcy of an individual or of a partnership would draw into the court of bankruptcy for adjudication all the property of indorsers and sureties of the bankrupts, for the creditors of such bankrupts may always have recourse to the property of their sureties. Moreover, the proposition itself is utterly inconsistent with the principle established by the uniform current of authority that a partnership is a distinct entity separate from the partners who compose it under the act of 1898, and the two propositions cannot both logically stand together. A partnership is a person. Section 1 (19). "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation be sufficient in amount to pay his debts." Section 1 (15). If a partnership is a distinct entity separate from the individuals who compose it, if its property and its debts are separate and distinct from the property of its individual members and from their individual debts, then it is insolvent under this act when the aggregate of its property is not sufficient to pay its debts. A partnership does not own, and it cannot assign or convey, the individual property of the partners who compose it. Their individual property is not its property. It cannot take or apply one dollar of their individual property to pay its debts. It does

not owe and it cannot be compelled to pay their individual debts. The most that the creditors of the individual partners can do is to subject to the payment of their claims the excess of the property of the partnership after the partnership debts have been paid from it, and they secure this, not because the partnership owed the debts, but because the individuals owe them, and because this excess, after the payment of the partnership debts, becomes individual property. The only logical conclusion, therefore, from the settled proposition that the partnership is an entity distinct from its members under this act, is that it is insolvent under this act when the partnership property, the only property this person has, is insufficient to pay the partnership debts, the only debts this person owes. Possibly the opposite conclusion has crept into the opinions of the courts under this act from the decisions under the insolvency law of Massachusetts and the bankruptcy law of 1867 where that theory necessarily obtains, because under those laws the insolvency or bankruptcy of the partnership was conditioned by the express terms of the statutes by the insolvency or bankruptcy of the partners, and the partnership was not in the conception of those laws a distinct entity, but a mere aggregation of partners. When, however, the act of 1898 made the partnership a person, required its consideration, adjudication, and the administration of its property as a distinct entity, and declared it insolvent when its property was insufficient to pay its debts, the tests of insolvency under the insolvency law of Massachusetts and the bankruptcy act of 1867 were inapplicable to cases under it, and the only test was that declared by the act itself, the insufficiency of the property of the person, the partnership, to pay the person's, the partnership's, debts.

The construction which has been given to section 5h in an earlier part of this opinion has not been adopted in ignorance of the fact that Judge Thomas said in Chemical National Bank v. Meyer (D. C.) 92 Fed. 896, 898, that:

"It is considered that subdivision "h" means that in case all the members of a partnership are not adjudged bankrupt, and the partnership itself has not committed an act of bankruptcy, and thereby becomes exposed to such adjudication, the partnership property shall, at the option of the other partner or partners, be administered by them or in bankruptcy."

But a thoughtful reading of this clause and of the entire section in which it occurs discloses no limitation of clause "h," or of its effect, to cases in which the partnership has not committed an act of bankruptcy or has not been adjudged a bankrupt. On the other hand, this clause occurs in a section which treats of the bankruptcy of partnerships. It is general in its terms, contains no restriction or exception, and, where a legislative body makes no exception to, or restriction upon a general provision, it is not the province of the courts to do so. The interpretation of this clause, therefore, is that where a partnership has committed an act of bankruptcy, and where it has been adjudged bankrupt as well as where it has not, and one or more, but not all, of its members, have been adjudged bankrupts, the partnership may not be administered in bankruptcy without the consent of the partner or partners who are not adjudged bankrupt (In re Blair [D. C.] 99 Fed. 76, 79; Vaccaro v. Security Bank, 103 Fed. 436, 443, 43 C. C. A. 279, 286), and it is

in accord with an established practice in equity which governs the administration of the affairs of insolvent partnerships when some of their partners are solvent (Hanson v. Paige, 3 Gray [Mass.] 239, 242).

The authorities upon the exact question—does the adjudication of the bankruptcy of a partnership draw into the court of bankruptcy the administration of the individual property of the members who are not adjudicated bankrupts?—are neither satisfactory nor enlightening. But one adjudication of this issue has been cited to us and that is In re Stokes (D. C.) 106 Fed. 312, in which Judge J. B. McPherson answered the question in the affirmative upon the authority of the obiter dictum found in Re Meyer, 98 Fed. 977, 39 C. C. A. 368, and summarily required the assignee for the benefit of creditors of a partner in a firm which had been adjudged bankrupt to deliver his individual property to the trustee of the estate of the partnership. It does not, however, appear in that case that this partner was solvent and the inference from the fact that he had made an assignment for the benefit of his creditors naturally is that he was not. Remarks of judges to the effect that this question should be answered in the affirmative may be found in the opinions of the courts in the following cases, but in none of them was this legal question presented for adjudication, in none of them was the right of an unadjudicated partner to administer his individual property asserted and adjudged: In re Meyer, 98 Fed. 977, 39 C. C. A. 368, an appeal from an adjudication of a partnership and one partner, bankrupts, in which the only question at issue was whether or not the established facts sustained the adjudication of bankruptcy. The question whether or not the property of the members not adjudicated bankrupts should be administered in the bankruptcy court was not at issue, and the remarks upon that question are mere obiter dicta, yet it is upon these remarks that the later statements to that effect in various opinions seem to rest. In re Mercur (D. C.) 116 Fed. 655, 656, and Id., 122 Fed. 384, 58 C. C. A. 472, in which the only question for decision and the only question that could be or was adjudicated was: Can the trustee in bankruptcy of the individual estates of all the partners who have been adjudged bankrupts draw to himself and administer the property of the unadjudicated partnership? And that question was answered in the negative. By so much the more should the question whether a court of bankruptcy may draw to itself the administration of the individual property of solvent partners upon an adjudication of the partnership be answered in the negative in view of the express provisions of the act of 1898, to which attention has been and will again be called. Dickas v. Barnes, Trustee, 15 Am. Bankr. Rep. 566, 568, 140 Fed. 849, 72 C. C. A. 261, 5 L. R. A. (N. S.) 654, in which partners attempted to present this question to the Circuit Court of Appeals of the Sixth Circuit by an appeal from an order that they turn over their individual property to the trustee of the bankrupt partnership, and that court dismissed the appeal on the ground that the appellants could invoke its jurisdiction to decide this issue of law by a petition to revise only, and not by an appeal. Matter of Wing Yick Co., 13 Am. Bankr. Rep. 757, 758, in which may be found an obiter dictum which cites the dictum in the Meyer Case, in a proceeding where the only question was whether the petition in bank-

ruptcy was sufficient to warrant an adjudication of the partnership. The views of the judges who have expressed their opinions in these cases in which they did not, and could not, adjudge the question here at issue, to the effect that an adjudication of the bankruptcy of a partnership drew into the court of bankruptcy the administration of the individual property of solvent and unadjudicated partners, appear to have been inspired by the following paragraph which fell from the Supreme Court in 1874, after it had referred to the bankruptcy act of 1867 and some of its provisions which were before it for consideration:

"These regulations [said the court] show that in cases where they apply the assignees in bankruptcy of the joint stock and property of a copartnership are required to administer the separate estate of the individual members of the firm or company as well as the described estate of the copartnership, but the bankruptcy act contains no regulations of a corresponding character applicable in a case where an individual member of a copartnership is adjudged a bankrupt without any such decree against the copartnership or the other partner or partners of which the copartnership is composed." Amsinck v. Bean, 89 U. S. 395, 401, 22 L. Ed. 801.

But, as we have seen, the act of 1867 expressly provided that "where two or more persons who are partners in trade shall be adjudged bankrupt"—the only way in which it provided for the adjudication of a partnership—"all the joint stock and property of the copartnership and also all the separate estate of each of the partners shall be taken" and administered (14 Stat. 534, § 36), while the act of 1898 has no such provision for the taking of the separate estates upon the adjudication of the partnership. On the other hand, the act of 1898 provides for the adjudication of a partnership bankrupt without an adjudication of any of its partners bankrupt, while the act of 1867 has no such provision. Again, the act of 1898 expressly prohibits the administration of the partnership property, and by so much the more the administration of the individual property of unadjudicated partners without their consent, while the act of 1867 contained no such provision. Thus, while the act of 1867 expressly required the court which adjudged a partnership insolvent to take and administer the separate estates of the partners and thereby sustained the rule in Amsinck v. Bean, the act of 1898 contains no such requirement, but forbids not only the administration of his individual estate, but the administration of the estate of the partnership without the consent of the unadjudicated partner (section 5h); so that the rule in Amsinck v. Bean is not only without support, but it is inhibited by the provisions of the act of 1898, and cannot prevail under it. This conclusion is supported by the actual decision rendered in Amsinck v. Bean, and by the reason which the court gave for it. The decision was that the assignees in bankruptcy of the estate of a partner could not take and administer the property of the partnership, and the reason given for it was that, while there was a provision in the act of 1867 for the administration of the individual estate of a partner upon the bankruptcy of the partnership, there was no provision for the administration of the partnership's estate upon the bankruptcy of an individual partner, and hence it could not be made. By the same mark the court of bankruptcy cannot take and administer the individual estate of an unadjudicated partner upon an adjudication of the bankruptcy of the partnership under the act of

1898, because, while there is a provision for the administration of the partnership estate upon the adjudication of a partner bankrupt in certain circumstances (section 5c), there is no provision in that act for the administration of the individual property of an unadjudicated partner upon an adjudication of a partnership bankrupt, and there is an express prohibition of the administration of the partnership estate in such a case without the consent of the solvent partner (section 5h), and by so much the more an inhibition of the administration of his individual estate without his consent.

The decisions to the effect that the bankruptcy of a partnership do not necessarily draw to the court of bankruptcy the administration of the individual estates of the partners (In re Stein & Co., 11 Am. Bankr. Rep. 536, 539, 127 Fed. 547, 62 C. C. A. 272; In re Duguid, 3 Am. Bankr. Rep. 794, 799, 100 Fed. 274; Strause v. Hooper [D. C.] 105 Fed. 590, 592; In re Blair [D. C.] 99 Fed. 76, 79) accord with this position, and the conclusion is that a court of bankruptcy upon an adjudication of a partnership bankrupt may not draw to itself and administer without his consent the individual estate of a solvent partner who has not been adjudicated a bankrupt.

The petition to revise must accordingly be dismissed; and it is so ordered.

HOOK, Circuit Judge (dissenting). A partnership composed of three members, having made a general assignment for the benefit of creditors, was adjudged bankrupt in an involuntary proceeding. In such a case it was not necessary that the partnership should have been insolvent (Act 1898, § 3a [4]; West Company v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098), and for the same reason the financial condition of the partners individually was immaterial and was not inquired into. It may be said, however, in view of subsequent proceedings, that the firm assets were barely sufficient to pay 5 per cent. of its debts. None of the individual partners were adjudged bankrupt. The validity of the adjudication is not attacked. It is expressly conceded in the brief of counsel that the court had jurisdiction of the parties and of the subject-matter. At the end of the order of adjudication is this clause:

"It is further ordered this adjudication binds only the partnership entity, and not the partners as individuals."

This is an unusual provision, but I take it that the court meant nothing more than that there was no adjudication that the partners individually were bankrupt. Given jurisdiction an adjudication that a partnership is bankrupt binds every one within the range of the law, including, of course, the partners themselves; and it is not to be supposed that the court rendered judgment in one sentence and in the next deprived it of much of its vitality and efficacy. So it is proper to view the case as though there were a valid adjudication against a partnership with all its necessary legal incidents but none against the members individually. The foregoing opinion proceeds upon that assumption.

When the insufficiency of partnership assets to pay partnership debts was discovered, the trustee applied for an order that one of the part-

ners be directed to turn over a piece of property belonging to him individually. It was incumbered with a mortgage, but the trustee asserted that the mortgage debt was the only individual debt of the partner, and that there was an equity in the property which should be applied to the partnership debts. The application was resisted by the partner, who averred that he was not insolvent, and had not been adjudged bankrupt. The court below denied the trustee's application.

I agree with the conclusion that, under the bankruptcy act of 1898, a partnership is to some extent to be regarded as a distinct entity, but I would not go so far as my associates have gone. The intent of Congress was to avoid defects in the prior acts, and not to create others equally if not more serious. The well-known interrelations between a partnership, its property, and its debts, and the individual partners, their property, and their debts, should not be overlooked or sacrificed to a fiction or form of words. That a firm's debts are its own debts is true in a sense, but they are also the debts of each partner. As Chief Justice Marshall observed in Barry v. Foyles, 1 Pet. 311, 317, 7 L. Ed. 157, "the assumpsit is made by all and by each." It has ever been the rule that the individual estate of a partner may with due regard to the rights of his individual creditors be subjected to the payment of partnership debts, and I am unable to discover in the bankruptcy act a purpose to wholly deny the trustee as the representative of the firm's creditors every remedy to that end. If, as is held, the partnership alone may be adjudged bankrupt, it is manifest that the trustee in case of deficiency of assets must in some way and at some time have the right to resort to the individual property of the partners. Otherwise the proceedings against the partnership would be incomplete and out of harmony with the comprehensive plan of the act of Congress as universally construed. If the partners individually are not adjudged bankrupt, and the logic of the entity theory is that they need not be, the remedy of the trustee must either be by plenary action to enforce their liability for firm debts, or they must be considered so far parties to the proceedings against their firm that they are subject to the orders of the court, and may be compelled to bring in their individual property for administration, as was sought in the court below. A bankruptcy proceeding against a partnership alone must naturally result in the discharge from further liability for debts. That is one of the ends contemplated by the act. In whose favor does the discharge operate, and from what class of debts? A discharge of the fiction termed "distinct entity" without a discharge of the partners individually signifies nothing of substance; and, if it releases the partners individually from firm debts, that result presupposes a subjection of their individual property to the payment of such debts. These considerations argue against the suggestion that the trustee's remedy may be by plenary action, for discharges in bankruptcy are granted those who are in the bankruptcy proceedings, and not third party debtors who have simply parted with what the sheriff or other officer could find on execution.

The individual members of a partnership which has been duly adjudged bankrupt are, by force of their relation to the firm and the duties and responsibilities prescribed by law, parties to the adjudica-

tion, and subject to all proper orders of the court. Notwithstanding a partnership may be regarded as a legal entity for some purposes, there is, when it is declared bankrupt, little difference between the personal duty of its several members and the duty of an individual bankrupt to aid the court and facilitate the winding up process. The act of 1898 contemplates jurisdiction over all the partners in a proceeding against a partnership. That is the true meaning of section 5c which says:

"The court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of all the partners and of the administration of the partnership and individual property."

A petition by one partner to have the partnership declared bankrupt is involuntary as to a member who refuses to join. The Supreme Court has prescribed (General Order 8 [32 C. C. A. xi, 89 Fed. vi]) that in such a case notice shall be given the nonconsenting member, and that he shall have the right "to make proof, if he can, that the partnership is not insolvent or has not committed an act of bankruptcy, and to make all defenses which any debtor proceeded against is entitled to take by the provisions of the act," but that, if an adjudication of bankruptcy is made, he shall be required to file a schedule of his debts and an inventory of his personal property the same as a debtor who is adjudged bankrupt. Naturally a like course must be pursued when, as in the case before us, creditors file the petition and the proceeding is involuntary as to all the partners. Reference is made to the foregoing to illustrate the purpose of the act that the individual partners are brought into a partnership proceeding and made subject to the jurisdiction of the court.

In the present case all the partners were in court when the partnership was declared bankrupt. They were parties to the proceedings both individually and as members, and became subject to all lawful orders of the court. They were individually bound for the debts of their firm, and under long-established principles their property was subject to be taken for the payment thereof. Possibly the trustee should, in the case before us, have asked an order that the partners file individual schedules and inventories rather than one for the surrender of a single piece of property. But this is not the point that was made in the court below or that is presented to us for decision. It was asserted by the trustee that there was an equity in the property above the mortgage which constituted the only debt of the individual partner. This was not denied by the partner who maintained that he was wholly solvent and had not been adjudged a bankrupt. If these claims are true, the rights of the individual creditors of the partner were not involved, and could not have been prejudiced by the order sought by the trustee.

I do not think either the solvency of the objecting partner or the fact that he had not been adjudged a bankrupt, or both combined, afforded sufficient reason for denying the application. That the partner was solvent was, as already observed, wholly immaterial to the adjudication against the firm. The act of bankruptcy committed was sufficient for the adjudication irrespective of the financial status of the

parties. Again, if jurisdiction over the partners was obtained, there is no substantial reason why they should not have been required to surrender their property, to the end that the court might completely settle the administration, even though they were not adjudged bankrupts individually. The individual liability for firm debts nowise depends upon their being bankrupts. In fact, there may be insuperable obstacles to adjudging an individual partner bankrupt, though he may be in court and possess property that should be charged with the debts of his bankrupt firm. Dickas v. Barnes, 72 C. C. A. 261, 140 Fed. 849, 5 L. R. A. (N. S.) 654, presents a signal instance of this. A banking firm committed an act of bankruptcy by making a general assignment for the benefit of creditors and was adjudged bankrupt in involuntary proceedings. The appellants, though held to be partners, were not adjudged bankrupts, two of them because they had not individually committed an act of bankruptcy, a third because he was a wage earner, and a fourth because he was a tiller of the soil. Other partners who had individually committed acts of bankruptcy were adjudged bankrupts. An order was made by the court below that all parties found to be partners, whether adjudged bankrupts or not, should file with the referee their several schedules of debts and inventories of properties in the same manner as if adjudged bankrupts, and should likewise surrender their property to that officer. This was the order appealed from. I will presently refer to the opinion delivered by Judge Severens for the Circuit Court of Appeals of the Sixth Circuit, but desire first to speak of the claim that the part of it which applies to the case now before us is obiter, and therefore not to be regarded. It is said the question before that court was whether the remedy of the nonbankrupt partners was by appeal or by petition to revise, and because the court held for the latter and dismissed the appeals the question decided was merely one of practice, and did not involve the problem before us. I think my associates do not look at Dickas v. Barnes in the way it was regarded by the court that decided it. It was said by that court:

"The motion to dismiss the appeals is founded on the character of the order and that involves in one aspect the jurisdiction of the court in bankruptcy."

And then the court proceeded to consider whether the court in bankruptcy by virtue of the adjudication against the partnership had jurisdiction to compel the partners not adjudged bankrupts to file schedules and inventories and surrender their property. It would seem that the views expressed upon that question were strictly in line with the requirements of the case. The court then said:

"The argument is that, not being bankrupts, they are not subject to the jurisdiction of the bankruptcy court; that the refusal to declare them bankrupts put an end to the authority of the court to retain control of their property for the purpose of the bankruptcy proceeding; and it is complained that the court by its order in effect denied to them the immunity to which they were entitled by reason of the provisions of the bankruptcy act. By act of July 1, 1898, * * * wage earners and tillers of the soil are excepted from those who may be adjudged involuntary bankrupts. And for our present purpose we think the other appellants, who committed no act of bankruptcy, might be regarded as standing on the same footing as those who by reason of their occupation were exempt from an adjudication of bankruptcy. It may be

conceded that but for the relation of these parties to the partnership the contention they make would be supported by perfectly adequate reasons. But, on account of that relation, other conditions exist. One who combines with others in a partnership enterprise becomes bound for the payment of the partnership debts. As partner, he shares the fortunes of the partnership. In certain circumstances, it may become subject to the exercise of the powers of a court of bankruptcy, where its resources will be gathered in to satisfy the claims of creditors. One of those resources is the liability of the partner, for which his individual property stands charged. It is true that by virtue of the rule in equity, as well as in bankruptcy, for the marshaling and distribution of assets, his individual property is first applicable to the payment of his private debts, if there be any. The surplus then becomes assets for the payment of the partnership creditors. These consequences of partnership are not derived from the bankrupt act, but from the general law; and a partner is not relieved from them by his exemption from an adjudication of bankruptcy."

It was finally held that the partner was not to be regarded as a stranger, but as a party to the bankruptcy proceedings, and that the court had jurisdiction to take such steps as were necessary to ascertain what assets were available and to subject them to the requirements of the case before it. In re Meyer, 39 C. C. A. 368, 98 Fed. 976. In this case the partnership and one partner were adjudged bankrupt, the latter having executed an assignment of the partnership assets for the benefit of creditors. There were originally three members of the partnership. One of them died, and the remaining surviving partner was not adjudged bankrupt. There was no attempt to reach the property of the nonbankrupt partner, but the assignee in insolvency contended that the partnership adjudication was invalid because neither partner should have been adjudged bankrupt, and the court was therefore without power in respect of the partnership. Judge Wallace, who spoke for the Court of Appeals of the Second Circuit, said:

"We are of the opinion that it is the scheme of these provisions to treat the partnership as an entity which may be adjudged a bankrupt by voluntary or involuntary proceeding, irrespective of any adjudication of the individual partners as bankrupt, and upon an adjudication to draw to the administration the individual estates of the partners as well as the partnership estate, and marshal and distribute them according to equity."

This may not have been strictly necessary to a decision of the point involved, but I think the opinion, including the above excerpt, is a clear exposition of those parts of the present bankruptcy act which relate to the administration of partnership estates.

The precise point arose and was decided by Judge McPherson of the Eastern District of Pennsylvania. In re Stokes (D. C.) 106 Fed. 312. He held that upon a partnership adjudication the assignee in insolvency of an individual partner who had not been adjudged bankrupt could be compelled to surrender to the bankruptcy court the individual property of such partner.

The suggestion that section 5h of the act of 1898 furnishes a conclusive argument against the power of the court to subject the property of a partner not adjudged bankrupt to the payment of the debts of his bankrupt firm involves I think a misconception of the purpose of that paragraph. It is as follows:

"In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered

in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

It is said this paragraph means that, when a partnership has been declared bankrupt and also one or more but not all of its members, the court has no power to administer the partnership estate without the consent of the nonbankrupt members. And the argument is that, as the court has no such power, much less has it the power when actually administering the partnership estate to compel a nonbankrupt partner to bring in his individual property. But it is manifest that section 5h does not bear the construction given it. It deals with the bankruptcy of individual partners, not with the bankruptcy of the firm. If an individual partner becomes bankrupt, it becomes important to know the effect upon the firm of which he is a member. It not infrequently happens that a firm remains solvent and prosperous, though a member becomes insolvent and commits an act of bankruptcy not chargeable to or connected with the business of the partnership. The provision for such cases is found in the paragraph quoted, and it has nothing to do with the bankruptcy of the partnership. It recognizes, however, that before the bankrupt partner receives a discharge his beneficial interest in the firm property, after the payment of firm debts, should be applied to the payment of his individual obligations. But, since his associates have an interest in the partnership property to which his individual creditors cannot look, they are justly given the preference in liquidating their joint affairs. Eventually, however, the net share of the bankrupt partner is brought into the individual proceedings. That a partnership may be an entity for certain purposes and its property its own does not prevent the bankruptcy of a single partner from resulting in a liquidation of the joint business, and the application of his net share therein to the payment of his individual debts. Rightly regarded the paragraph quoted suggests the true rule for the converse situation—the bankruptcy of the partnership and the nonbankruptcy of a member. There is, however, this distinction. In a case covered by section 5h, the nonbankrupt partner has no contractual connection with the debts of his bankrupt copartner. He is not liable for them, and should, therefore, suffer no loss or inconvenience, save what comes from a necessary winding up of the partnership as in other cases of dissolution. Therefore he is given the preference in the settlement of the firm business of which he is part owner. But these reasons do not apply in a case like the one before us. The nonbankrupt partner is liable for all the debts of his bankrupt firm, and the firm creditors may look to his property for satisfaction subject to equitable limitations in favor of his individual creditors. A court of equity with all parties before it, partnership, and members, grants full relief, and the law has not required it to intrust the administration of estates to resisting debtors.