## In re BARDEN.

(District Court, E. D. North Carolina. May 15, 1900.)

1. BANKRUPTCY—FILING FEE—PARTNERSHIP PETITION.

Where a partnership applies for the benefit of the bankruptcy law, and files a petition for the adjudication of the firm as such, and also separate petitions for the adjudication of the several partners, each petition, with the accompanying schedules, constitutes a separate and distinct "case," within the meaning of the provisions of the act relating to fees of officers; and a deposit of the statutory filing fee of $25 must be made, not only for the partnership, but also for each member of the firm who seeks an adjudication.

2. SAME—TIME OF DEPOSITING FEE.

A deposit of the statutory filing fee by a proposed voluntary bank- rupt, not within the exception in favor of paupers, is a condition pre- cedent to the filing of the petition; but if the petition is placed on file; and an adjudication made without payment of such fee, the objection may be raised on the bankrupt's application for discharge, and action on such application will be stayed until the filing fee is paid.

In Bankruptcy. On bankrupts' petition for final discharge.

The referee certifies the following facts:

"On the 4th day of March, 1900, I received order of reference, and partner- ship adjudication, petition, and schedules, in the matter of J. P. Wilson & Co., bankrupts. The final clause of the petition is as follows: 'Wherefore your petitioners pray that the said firm may be adjudged by a decree of the court to be bankrupts, within the purview of said acts.' The order of reference and adjudication are hereto attached, and marked Exhibits 'A' and 'B,' respectively. Attached to the individual schedules, which accompanied the schedule of partnership property, were individual petitions, but the un- dersigned referee is informed that these individual petitions were not filed as separate cases with the district court clerk in Raleigh; that no deposit fee was made, except $25 in the partnership matter; that the judge was not asked to make individual adjudications, and that no individual adjudica- tions were made by the judge, and that the individual petitions and schedules were not referred to the referee, except as a part of the partnership peti- tion; that at the first meeting of creditors, in the matter of J. P. Wilson & Co., the referee called the attention of the bankrupt's attorney to the fact that there was no individual adjudication of bankruptcy, though individual petitions had been filed, and suggested that members of bankrupt firm would not be entitled to receive individual discharges; the said attorneys; Messrs. Stevens, Beasley & Weeks, decided to file individual petition with the district court clerk in Wilmington, so that the referee could be author-

ized to make the individual adjudications; a few days afterwards, to wit, on March 22d, the referee received individual petitions and schedules in the matters of J. E. Pollock, J. R. Barden, and J. P. Wilson, with order of reference from deputy clerk of the United States district court at Wilmington, and, supposing deposit of $25 had been made in each case, he at once made adjudications in these matters, and mailed notices of first meeting to creditors, and had same published in the Morning Star; that on the following day he was notified by the clerk in Wilmington that no deposit had been made; the referee at once notified Messrs. Stevens, Beasley & Weeks, and requested that same be made. They replied: 'The filing fees are in the hands of Mr. Weeks, my partner, in Wilmington. Mr. Shaw at first refused to file individual petitions of Barden and others, but, upon examination of the order sent from Raleigh signed by Judge Purnell, it stated that the individual adjudications had been made by Judge Purnell, and fees paid. Therefore we have been holding the funds. On April 2d, when we see you, we will do what is right.' Neither in the wording of the act nor in the form of partnership petition prescribed by the supreme court does it seem to have been contemplated that discharge from individual debts could be had upon partnership petition. Of course, it is frequently necessary that individual assets and liabilities be considered in the settlement of partnerships by trustees in bankruptcy. If every member of a partnership could receive a discharge from his individual debts after a firm adjudication, all the bankrupts in a town, by forming a partnership, could get their individual discharges for $25. However this may be, no individual adjudications were asked in the partnership petition, nor granted by the judge, and the individual petitions filed in a different town constituted separate cases. Had the referee known that no deposit fee had been made in these cases, he would not have signed adjudication, and called first creditors' meeting in the individual matters; but, when he was informed no fees had been deposited, he had already signed adjudications, mailed notices, and publication made, so he concluded to go on with the proceedings, and when petitions for discharge were filed raise the questions—First, of whether the bankrupts are entitled to individual discharge where there is no individual adjudication; and, second, whether bankrupts can file partnership petition in Raleigh before the judge, and, after partnership adjudication is made, file individual petition in Wilmington, and have the referee make adjudications on these, and proceed to discharge at a cost of $25 for the filing fees of all. The undersigned referee does not think that the bankruptcy act and general orders justify the contention of the bankrupts in this case, and he therefore recommends that they be required to make the $25 deposit in each of the individual proceedings before receiving individual discharges."

Stevens, Beasley & Weeks, for bankrupts.

PURNELL, District Judge (after stating the facts as above). The question presented by the foregoing finding of facts, of which the individual bankrupt partners ask a review, seems to be one of first impression. No opinion in point is cited, except two district court opinions, in which I cannot concur; and, if there has been any other decision, it has been overlooked by counsel, referee, and court. The decision must depend on a construction of the statute itself, gathering the legislative intent from the provisions therein,—"from the four corners" of the act. Section 52 of the bankruptcy act, after prescribing the duties of the clerk, says: "Clerks shall respectively receive as full compensation for their services in each estate a filing fee of ten dollars, except where a filing fee is not required of a voluntary bankrupt." This section further provides for the fees of the marshal. The case at bar is not one of those excepted. Section 40 of the act provides: "Referees shall receive as full compensation for their serv-

ices payable after they are rendered a fee of ten dollars deposited with the clerk at the time the petition is filed in each case," etc.; the remaining clause referring to commissions, which are not pertinent to or material in the present inquiry. Section 48 provides for a fee of five dollars and commissions for the trustee "in each case."

What do the expressions "in each estate" and "in each case" mean, as used in the statute, when a partnership files a petition in bankruptcy? Among the definitions peculiar to the act is that of "person," which (section 1, subsec. 19) shall include partnerships, showing the legislative intent was to recognize firms as legal entities, separate and distinct from the individual members of the firm or partnership. Section 4, applying this definition, provides for a voluntary petition in bankruptcy of a partnership, and the next section (5), without the aid of the definition, provides expressly for such adjudication. Subsection (d) of this section provides that the trustee shall keep separate accounts of the partnership property and of the individual partners; (e) that the expenses shall be paid from the partnership property and the individual property in such proportion as the court may determine; * * * that the proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of the individual debts; the surplus, should there be any, after paying the individual debts, is to be applied to the payment of partnership debts, and vice versa; and (g) the court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estate so as to prevent preferences, and secure the equitable distribution of the property of the several estates. The following provision is for the administration of the partnership estate when all partners are not bankrupt. Other sections might be quoted to illustrate the provisions peculiar to partnerships, but the foregoing are sufficient to show a recognition of the partnership as a distinct entity, and the legislative intent to recognize different estates when a partnership and the individual partners are adjudged bankrupt,— the sense in which the words "each estate" are used in the section providing for the payment of the clerk's fees. Most of the decisions which have been made on this line apply to the commissions allowed by the act, and none has been cited or found applicable to the filing fees. In Re Meyer, 39 C. C. A. 368, 98 Fed. 976, the circuit court of appeals of the Second circuit took the same view, above expressed, as to the distinct entity of a partnership and individual partners, and held, in an involuntary proceeding against a firm and its members, no adjudication can be made against a partner who has not committed, or participated in committing, any of the acts specified in the statute as acts of bankruptcy. In general order No. 8 the supreme court seems to recognize this distinction as it does in the prescribed forms. 18 Sup. Ct. v. Form No. 2 (Id. xviii.) closes with a prayer that the firm be adjudged bankrupt, and No. 1 (Id. xi.) is the individual petition. In short, the proceedings are separate; the estates different. The only logical conclusion from the act itself, keeping in view the legislative intent deducible therefrom, "estate" having no

restricted technical meaning, but meaning the ownings, real and personal property, choses in action, whatever may belong to the person as defined in the statute, is that congress meant exactly what the statute provides. Clerks shall receive for their services to each estate a filing fee of $10; that is, $10 for filing the petition and schedules of the partnership, and $10 for filing the petition and schedules of each individual member thereof,—$10 from each estate to be administered. And if congress thus used the words "each estate," it is not probable the phrase "in each case" was used in a more restrictive sense. In section 1 special meanings are given to the words and phrases used in the act, "unless the same be inconsistent with the context." Congress thus, in addition to the rule of construction, by express terms made the context the test for the meaning of the words and phrases used in the act.

The labors of the referee and trustee are greater in every case than those of the clerk. The referee, by section 39, is required to prepare dividends, examine schedules, and, if defective, cause them to be amended, furnish information to parties in interest, prepare records, prepare and file schedules of property and list of creditors, etc. In short, he is the court in many respects, as defined in section 1. As the estates must be kept separate, the petitions and schedules being different, many questions may arise as to the estates of the firm or individual members, thus making several cases. Because the papers are or may be filed in the same files case, jacket, or envelope does not, of necessity, make them one and the same case. The case at bar is a part of the original proceeding of J. P. Wilson & Co., as was the case of J. E. Pollock, recently decided, but they involve questions which could not arise in the original proceeding; hence are separate cases. The trustee, too, whose duties are defined, must keep separate accounts of each estate. In short, the act recognizes separate estates, and it is a logical conclusion from the act itself it was intended that each petition, set of schedules, and estate should in the bankruptcy court constitute separate cases. "Case" has no technical restrictive legal meaning. Congress evidently used the word to apply as above considered, and not, while allowing to the clerk a filing fee in each estate, require the officers created by the act to administer, collect, distribute, and settle possibly half a dozen estates as one case. The duties of these officers are more responsible, burdensome, and laborious than those of the clerk, and it is not reasonable to suppose congress intended the narrow construction to be given to the act which would require of them so much more for so much less compensation in this peculiar class of proceedings. My conclusion is that the proper construction of the statute in proceedings where petitions are filed by a partnership to have a firm adjudged bankrupt, and a petition by the individual members of the firm, is that each petition and the accompanying schedules constitute a separate and distinct case; hence the referee and trustee are entitled to a fee of ten and five dollars, respectively, in each case,—one on the partnership petition, and one on the petition of each individual member. The general idea of the bankrupt law is economy in its administration, but, above this, the law is just,—just to bankrupts, just to creditors,

and was intended to be just to the officers of the court. Any other construction would not be in keeping with the spirit of the law, but flagrantly unjust to the officers.

The case at bar is one strong in point. The adjudication as to the firm was made at Raleigh by the district judge on the petition and schedules there filed. Afterwards petitions and schedules were filed at Wilmington, and the referee made the adjudications. Here are separate cases certainly, and the proceeding is in strict conformity with the statute. There is no argument in the fact that the court at Wilmington is a part of the court at Raleigh, and the officer at Wilmington a deputy clerk. Under Act April 13, 1792, c. 17, there was but one district, known as "North Carolina District," and this district was by act of February 13, 1801, divided into three districts, to be known as "Albermarle," the courts of which were to be held at Edenton; "Pamlico," the courts of which were to be held at New Bern; and "Cape Fear" (Clarendon), the courts of which were held at Wilmington. There was one judge. It was provided by statute the district court should "appoint clerks for said courts, respectively, which clerks were required to reside and keep their records of said courts at the places of holding said courts whereto they shall respectively belong." The courts of the district have been held at these places until, since 1872, the court formerly held at Edenton has been held at Elizabeth City. The Western district of North Carolina was established by the act of June 4, 1872 (17 Stat. 217). The act of August 9, 1894 (28 Stat. 274), provided for a session of the district court at Raleigh, and re-enacted the law as it was before in regard to other courts of the district. There has been no other special legislation on the subject of the clerks, but, in deference to a decision of the comptroller of the treasury (1898), that there should be no complication in regard to the accounts of these officers, in which it was held that there could be but one clerk in the district, a clerk was appointed to reside at Raleigh, and the other clerks made deputy clerks. The decision referred to does not seem to be in conformity with law as contained in the acts of congress, but deferring to it saves trouble to the clerks in having their accounts settled. The several courts in this district are separate and distinct, according to the acts of congress. The clerk at Wilmington should, as required by section 51, subsec. 2, of the bankrupt act, have collected a fee of $25 in each petition filed. The payment of these fees is a condition precedent to filing a petition, when the case does not fall under the exception, as this one does not, and until paid the petitioner has no standing in the bankruptcy court. The petition for final discharge will not be heard when it appears the fees have not been paid. Action herein will be deferred until the filing fees are paid. This ruling applies to the petitioners J. R. Barden, J. P. Wilson, and J. E. Pollock, bankrupts, trading under the firm name of J. P. Wilson & Co. The ruling of the referee is affirmed.