## In re JUNCK & BALTHAZARD et al.

(District Court, E. D. Wisconsin. April 22, 1909.)

1. BANKRUPTCY (§ 149*)—PERSONS SUBJECT TO JURISDICTION—PARTNERSHIP—PROCEEDINGS AGAINST PARTNERS.

Bankr. Act July 1, 1898, c. 541, § 5h, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), which provides that "in the event of one or more, but not all, of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy unless by consent of the partner or partners not adjudged bankrupt," contemplates a case where one or more, but not all, of the members of a partnership are adjudged bankrupt, while the partnership as such is not before the court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 149.*

What persons are subject to bankruptcy laws, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

2. BANKRUPTCY (§ 42*)—PARTNERSHIP—PROCEEDINGS BY PARTNER.

A partner may file a petition in voluntary bankruptcy on behalf of himself and of the partnership, and in such case the proceedings are voluntary as to both himself and the partnership and their respective creditors, and no act of bankruptcy on the part of the partnership need be shown; but as to a nonassenting partner the proceedings are involuntary, and he may under general order 8 (32 C. C. A. xi, 89 Fed. vi), on being served with notice, appear and make proof, if he can, that the partnership is not insolvent or had not committed an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 42.*]

3. BANKRUPTCY (§ 51*) — ADJUDICATION AGAINST PARTNERSHIP — RIGHTS OF NONASSENTING PARTNER.

Where a voluntary petition is filed by a partner on behalf of himself and the partnership, on which the partnership is adjudged bankrupt, a nonassenting partner cannot be adjudicated a bankrupt, and, if solvent, has the right to take upon himself the settlement of the partnership business, reporting to the court the residuum of assets remaining to be distributed by the court among the partnership creditors; but in any event he is required under general order 8 (32 C. C. A. xi, 89 Fed. v') to file a schedule of his debts and an inventory of his property, since the surplus of his property over his debts is an asset of the firm to be applied by the court, if necessary, to the payment of the partnership debts.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 51.*]

---

In Bankruptcy.

Rowan & Kalaher, for petitioner.
J. G. Davalaar, for creditor Saveland.
H. L. Kellogg, for John Balthazard.

QUARLES, District Judge. John H. Junck filed a voluntary petition on behalf of himself individually and of the firm of Junck & Balthazard, of which he is a member. Such petition is in the usual form, accompanied by schedules of assets and liabilities of himself and of the firm, praying for the adjudication of himself and the partnership. Balthazard, the other partner, declines to be adjudicated, and has raised an issue by his answer, in which he sets up the solvency of the firm and of each of the partners. Saveland, one of the creditors of the firm, has interposed an answer denying the insolvency of the partnership, and further setting up that such firm was dissolved long before the petition was filed. Thereupon due notice was served upon Balthazard as required by the practice in involuntary cases. When such issue came on to be heard, Balthazard made appearance by counsel, but did not appear personally. He offered no proofs to establish the solvency either of the partnership or of the members thereof. Neither did he as a solvent partner ask leave to settle the partnership affairs. The testimony offered upon said hearing tended to show that neither Junck nor the firm had sufficient assets to discharge their respective obligations.

From these facts it sufficiently appears:

First, that an adjudication must pass as to the petitioner Junck individually. For this purpose the petition and proofs are entirely sufficient, and no creditor can intervene in such case.

The next question that arises is whether in this condition of affairs the partnership may be adjudicated. The authorities all seem to concur in the view that for some purposes at least the partnership is to be considered a person and a separate entity that owns property and owes debts. The marked difference in the phraseology of the act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]) from all former acts can lead to no other conclusion. The arguments have been stated and the authorities grouped in Re Bertenshaw, 157 Fed. 363, 85 C. C. A. 61, 17 L. R. A. (N. S.) 886, and in Re Perley & Hays (D. C.) 138 Fed. 927, so that it seems unnecessary to review them again. Section 5a, by language too plain for construction, allows a partnership as such to be adjudged a bankrupt. Subdivision "b" confers upon the creditors of the partnership the appointment of the trustee. Subdivision "c" provides for a case where the court has by the petition jurisdiction of the partners, and provides that the court may draw to itself the jurisdiction of the other partners and the administration of both the partnership and individual property. Subdivisions "e," "f," and "g" adopt the familiar equitable principles of marshaling assets. I am persuaded that subdivision "h" contemplates a case where one or more, but not all, of the members of a partnership are adjudged bankrupt, while the partnership as such is not before the court. In my opinion the conclusion drawn by Judge

Hook in the dissenting opinion in Re Bertenshaw, 157 Fed. 380, 85 C. C. A. 61, 17 L. R. A. (N. S.) 886, as to the proper construction of subdivision "h," is logical, and tends to harmonize the several provisions of the law. The same view has been adopted in Re Mercur (D. C.) 116 Fed. 655, affirmed in 122 Fed. 384, 58 C. C. A. 472.

Here we have the partnership and one partner before the court, while the other partner declines to be adjudicated. Certain it is that this situation was contemplated by Congress when section 4 was enacted. General order No. 8 (32 C. C. A. xi, 89 Fed. vi) contemplates the very situation we have in hand. Applying it to the present case, it allows Balthazard to resist the prayer of the petition after service · upon him of notice as required in the case of a debtor petitioned against. It recognizes his right to appear at the hearing and make proof, if he can, that the partnership is not insolvent, or has not committed an act of bankruptcy; and if he fails so to do, and an adjudication passes upon the petition, then he must be required to file a schedule of his individual debts and an inventory of his property as though an adjudication had passed against him.

It thus appears that for certain purposes at least the petition, so far as Balthazard is concerned, is to be regarded as involuntary. Metzker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. 351, 27 L. Ed. 654. This decision was under the former act, and applies only by analogy to the present law. See, also, In re Murray (D. C.) 96 Fed. 600. In the case of a nonassenting partner, the procedure as to him is the same as in an involuntary case; but as to creditors the petition is voluntary, and there is no room for the issue which the creditor Saveland attempts to raise by his intervention, and his answer may be stricken from the files. In re Carleton (D. C.) 115 Fed. 246, 249.

This disposes of the objection, which was much argued at the bar, that the petition was so far involuntary that it was defective without an averment showing that the firm had committed an act of bankruptcy. The better rule seems to be that in such case the ordinary averment that the firm has not sufficient assets to pay its obligations, and is willing to submit its property for distribution, is sufficient, and the filing of such a petition by one of the partners is of itself considered the equivalent of an act of bankruptcy. Hanover Bank v. Moyses, 186 U. S. 181, 190, 22 Sup. Ct. 857, 46 L. Ed. 1113; In re Forbes (D. C.) 128 Fed. 137. This conclusion was doubted by Judge Lanning in Re Ceballos & Co. (D. C.) 161 Fed. 445, because under the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), it was explicitly provided that the filing of such a petition should constitute an act of bankruptcy, and because no such provision occurs in the present act.

The real question, after all, seems to hinge upon the sufficiency of the petition without any averment of a technical act of bankruptcy. For the purposes of this controversy, the petition must be considered as voluntary, and section 4 clearly extends the benefits of the act· to every person owing debts, and this includes a partnership. To hold that every voluntary petition must set up a technical act of bankruptcy would emasculate the act. No proof having been offered at the hearing to controvert the averments of the petition as to the in-

solvency of the firm, it follows that an adjudication must pass against the firm.

The next question presented in natural order is what disposition ought to be made of the objecting partner Balthazard. This question has been much discussed and variously decided. It seems to me that the following conclusions are sustained by a fair construction of the bankruptcy act of 1898:

First. That the objecting partner cannot be adjudicated against his will.

Second. That such nonconsenting partner does not hold a veto on the jurisdiction of the court over the partnership as an entity. If this concession were made, the objecting partner might bar the way to any discharge from partnership debts, and thus neutralize section 4a of the act, which expressly confers "the benefits of this act" to any person who owes debts.

Third. That the inherent right of a solvent partner to close up the affairs of the firm must be recognized by the court of bankruptcy. This right was not conferred by the bankruptcy act, neither can it be abridged or taken away by it. Balthazard, the surviving partner, might defeat the jurisdiction of the bankruptcy court in two ways: First, by proving the solvency of the firm; second, by showing himself solvent and agreeing to take upon himself the settlement of the partnership business, reporting to the court according to the equitable rule the residuum of assets remaining to be distributed by the court among the partnership creditors. As Judge Archbald remarks in Re Mercur (D. C.) 116 Fed. 655:

"It merely preserves to an existing solvent partner the right to administer the affairs of the partnership, if he wants to, and it is not to be carried further by mere implication."

Failing, as Balthazard has done, to take either course, there remains only one course to be pursued: He must file his schedules of individual property and individual debts as provided by general order No. 8. This is not an arbitrary regulation, but is inherent in the very nature of the case. Neither is it new. General order No. 18, under the act of 1867, was substantially the same. If Balthazard has a surplus of assets after the discharge of his individual liabilities, such surplus must be devoted to the payment of the firm liabilities if the firm assets are insufficient for that purpose. In other words, such surplus must be considered an asset of the firm, and no settlement can be complete without the information sought to be derived from the individual schedules contemplated by general order No. 8.

The objecting partner may prevent his own adjudication, but he cannot escape an accounting which is necessary to facilitate the jurisdiction of the court over the partnership case. On this proposition In re Ceballos & Co. (D. C.) 161 Fed. 451, is exactly in point.

Therefore the order must be that John Balthazard do forthwith file with the clerk of this court schedules of his individual property and liabilities in manner and form as required of one who has been adjudicated, and the order will provide for the adjudication of Junck personally, and of the partnership.