IN THE MATTER OF THE CITY CONTRACTING & BUILDING COMPANY, A COPARTNERSHIP, BANKRUPT.

May 15, 1913.

1. *Bankruptcy—Schedules, requirements:*  A statement of assets and liabilities which does not furnish a direct and full answer as to each item of the official form of schedules adopted by the Supreme Court, 172 U. S. 668-679, 89 Fed. xvi.-xxvii, is insufficient.

2. *Same—Partnership—Non-bankrupt partners—Schedules:*  In a partnership bankruptcy, a firm member who is not himself adjudged bankrupt is not required to file schedules of his individual assets and liabilities; for the reason, in the main, that his individual estate may not without his consent be administered in the firm proceeding.

3. *Same—Same—Adjudication of firm and members in one proceeding—Fees:*  On petition of a partner for adjudication of his firm as bankrupt, any of the respondent partners who appear at the hearing and ask to be adjudged bankrupt as individuals in the same proceeding, may be so adjudged, and without payment of separate filing fees,— but with payment, however, of expenses of advertising notices to individual creditors.

4. *Same—General orders, construction:*  The general orders in bankruptcy prescribed by the Supreme Court are not to be taken as enlarging the statute, but must if possible be construed consistently with it; and so far as they cannot be so construed, they must be disregarded.

*In Bankruptcy:* On adjudication; and on motion for schedules of firm members.

*Lorrin Andrews* for Wong Hong Yuen, petitioning partner.

*F. Schnack* for partners Chun Ping and Lau Chung.

*J. W. Russell (Thompson, Wilder, Watson & Lymer* with him) for partners Au Tin Kwai and Au Ne Chong.

*I. M. Stainback (Holmes, Stanley & Olson* with him) for Allen & Robinson, Ltd,, and Hoffschlaeger Company, Ltd., creditors.

*E. W. Sutton (Smith, Warren & Hemenway* with him) for the trustee.

CLEMONS, J. On the petition of Wong Hong Yuen, a member of the City Contracting & Building Company, a copartnership, praying "that the said firm may be adjudged . . . to be bankrupts" (as concludes Form 2 adopted by the Supreme Court: 172 U. S. 681, 89 Fed. xxvii.), this copartnership, composed of the petitioning partner and the respondents Chung Ping, Wong Gock, Au Hang Hing, Au Tin Kwai, Lau Chung, and Au Ne Chong, was adjudged a bankrupt. The respondents had all appeared and admitted service, and thereafter upon the day set for hearing, they all, excepting Au Hang Hing, expressly consented to the adjudication of the firm as prayed. Au Hang Hing entered no demurrer, plea, answer, motion, or objection, but "stood mute," except to state in open court that eight days before the petition was filed he had withdrawn from the firm by sale of his interest to the copartner Wong Gock. See Black, Law Dic., 2d ed., 818, tit. "nihil dicit;" *Buena Vista Freestone Co. v. Parrish,* 34 W. Va. 652, 654, 12 S. E. 817, 818; *Wilbur v. Maynard,* 6 Colo. 483, 485; *Falken v. Housatonic R. Co.,* 63 Conn. 258, 27 Atl. 1117, 1118-1119. See, also, *In re Solomon & Carvel,* 163 Fed. 140, 20 Am. B. R. 488, 489; Brandenburg, Bankruptcy, 3d ed., sec. 133. The adjudica-

tion having been ordered, the firm members, with the exception of Wong Hong Yuen, Au Hang Hing and Wong Gock, by their attorneys in open court, asked to be adjudged bankrupts as individuals.

Subsequently, upon motion of certain creditors and after due notice, the firm members were all ordered to file their individual schedules of assets and liabilities,—in the court's reliance upon the authorities of Collier, Bankruptcy, 9th ed., 1059, par. viii., and 3 Remington, Bankruptcy, sec. 477½. The petitioning partner complied with this order. And the respondent Chung Ping has since filed schedules, but they do not conform with the full requirements of Form 1 established by the Supreme Court, 172 U. S. 668-679, 89 Fed. xvi-xxvii.,—being merely a bare list of certain chattels, on the one hand, and on the other of certain debts whose nature is not specified. And the respondents Au Tin Kwai and Au Ne Chong have filed affidavits of "no [individual] assets excepting property exempt" by law, but no statement as to their individual liabilities. The respondents Wong Gock and Au Hang Hing have yet filed no schedules.

[1]  Although not strictly required by this opinion, in view of the ruling presently to appear, the opportunity is taken to declare, that this court will countenance nothing but a strict and full compliance with the statute; rules and practice with regard to schedules. The Supreme Court in the forms prescribed has seen fit to provide that these sworn schedules shall give detailed information on definite points. A bare statement of assets and liabilities is not enough: the party must go through every item of the schedules and show the facts relating thereto,—nothing is to be left to inference. We are not to accept, e. g., his short answer, that he has nothing and owes nothing, but his verification affidavit must cover every item which the Supreme Court has considered of enough importance to designate in these specific forms.

[2a]  As to the delinquent respondents Wong Gock and Au Hang Hing, it being evident that they, who were in court

and, on at least one occasion, were expressly requested to file their schedules, and who, on special motion of creditors for an order compelling them to do so, were thereafter served with a copy of the court's express order to that end, are not disposed to comply with the order, their attitude is assumed to be founded on the advice of there being no lawful authority for an order directing a non-bankrupt partner to file schedules in a proceeding in bankruptcy of his firm. Inasmuch as there are authorities directly or impliedly supporting this position, the order under discussion contrary to these authorities, and made on an uncontested presentation of the motion, calls fairly for reconsideration. And, also, any decision on so mooted a point should have some discussion, as was not then had, of the reasons which induced it.

This is one phase of the constantly recurring and unsettled question of the status of the firm members in a partnership bankruptcy, and of the intent of Congress in changing the status of the firm itself from an association not distinct from its component members to an entity entirely separate and distinct.

Although, by nearly unanimous opinion, the firm is held to be an entity under the act of 1898, yet the administration of the act in pursuance of the entity doctrine is by no means established, and by no means clear. Indeed the confusion of authorities is so persistent and in various phases the breach so widening, even between judges of the same court (see, e. g., *In re Bertenshaw,* 157 Fed. 363, 19 Am. B. R. 577, 17 L. R. A., N. S., 886), as to call for legislative remedy.

And it is, specially, because of this variance of authorities on the question whether in cases of partnership bankruptcy the estates of the firm members are necessarily drawn into the administration, and, so, whether the solvent, or non-bankrupt, member can be compelled to file schedules of individual assets and liabilities, that it becomes worth while to state the reasons leading to my own matured conclusion:

for the power, if any, of the court to require the filing of schedules of individual members, rests, it would seem, upon the very same foundation as the right to draw the estate of the partner into the administration, at all.

There is no direct provision of the statute, and as I am now satisfied, no warrant even for an inference, that the bankruptcy court has any such power, desirable though it may be. And my conclusion has not been reached without recognition of the fact that there are provisions of section 5 of the act, relating to the title "partners," e. g., clauses "d," "e," "f," and "g," 30 Stat. 547-548, which are well adapted to the administration of the estates of all the individual firm members, but which for want of clear authorization cannot be used to that particular end without some regard to the condition of the estates of those members as to solvency; nor have I failed to note that there are some grounds of criticism of the leading judicial authority to support my conclusion, the majority opinion by Circuit Judge Sanborn in the matter of *Bertenshaw*, supra.

Thus, that opinion errs in resting its conclusion to any degree on plausible, and in any event not controlling, considerations of policy: see 157 Fed. 367-368, 19 Am. B. R. 582-583; for it makes much too good a case for the "shrewd and able" solvent partner,—in spite of whose shrewdness and ability, however, his firm has fallen into insolvency. When a partnership has reached this point,—when its creditors are compelled to go begging for their money,—it is useless to urge any such argument as, "Why should not the solvent partner administer the partnership property and his own and pay the partnership debts free from the delay and expense of a trustee?" 157 Fed. 368, 19 Am. B. R. 583. For the solvent partner has, with his fellow partners, already had the opportunity to pay the firm debts, as it may be said to have been in a sense his legal duty to do, the firm obligation being by the law of partnership his as well as that of the firm and of the other partners. But in spite of

the member's solvency, and in spite of his "shrewdness" and his "compentent[cy] to manage the individual property and the property of his firm" better than any trustee, 157 Fed. 369, 19 Am. B. R. 583, he has permitted his firm to fall into a condition in which bankruptcy is sought by the unsatisfied creditors as a way toward, though not to, complete relief. It is only by the intent of the law as written, and not by any regard for the solvent partner in such case, that the court's ruling must be justified.

Also the majority opinion takes a view of the application of clause "h" of section 5, 30 Stat. 548, 157 Fed. 366-368, 19 Am. B. R. 582-583, with which not one of the decisions construing this clause has been found to concur. Though agreeing with the court's final ruling in that case, I deem Judge Hook's dissenting opinion to express the true view of clause "h"." 157 Fed. 379-380, 19 Am. B. R. 599-600. See, also, *In re Junck & Balthazard,* 169 Fed. 481, 482-483, 22 Am. B. R. 298, 299-300; *Francis v. McNeal,* 186 Fed. 483, 485, 26 Am. B. R. 557, 560. The object of this clause,—in which there is no intimation of its application to a firm bankruptcy,—would seem to be to make it clear, by way of final proviso after clauses "a" to "g" applying to partnership administration, that the property of a firm itself is not to be administered merely because of the bankruptcy of one of its members. It may be noted, that the illuminating article of Professor J. D. Brannen of the Harvard Law School, on "The Separate Estates of Non-Bankrupt Partners in the Bankruptcy of the Partnership," 20 Harv. Law Rev., 589, published a few months earlier, while characterizing this clause as "somewhat ambiguous," Id. 591, mentions only the use which Judge Hook's dissent found for it. Id. 595. The majority opinion argued that "if the property of a bankrupt parnership cannot be administered . . . without the consent of the solvent partner who has not been adjudged bankrupt, a fortiori the latter's individual property cannot be." 157 Fed. 367, 368, 374-375, 19 Am. B. R.

582, 583-584, 593.  Even assuming, as does the majority opinion, that clause "h" applies to cases in which a firm is sought to be adjudged, is this a fortiori conclusion a, necessary one?  Can Congress, for aught that appears in the statute, be held to have left to mere inference so important a matter of administration?  It is not easy to believe that Congress, with the end in view which the majority opinion holds, intended by this clause "h" any such short-cut legislation; for the logic of the majority opinion is, that Congress having in view two things, viz., (1) the non-administration of partnership property in the bankruptcy of a firm member, and (2) the non-administration of a firm member's property in the bankruptcy of the firm, expressly provided for only one and left the other wholly to inference.  In other words, it is enough to say, by way of criticism, that other grounds than one of bare inference, should be looked to for a solution of the question,—especially where the inference is from "somewhat ambiguous" language.  See *Easton v. Childs,* 67 Minn. 242, 244, 69 N. W. 903, 904; 20 Harv. Law Rev. 591.  And that there are sufficient other grounds, will presently be shown.

Again, the majority opinion's discussion of clause "c" of this section, 30 Stat. 547, is not altogether convincing.  157 Fed. 366, 367, 374-375, 19 Am. B. R. 581-582, 593.  And the asserted "unavoidable inference" from this clause, 157 Fed. 366, 19 Am. B. R. 581, is not an inference upon which it would be safe to found a general rule,—not an inference helpful to a clear understanding of the clause's meaning in the more common case where one at least of the partners is insolvent.  It is worthy of note, though of course not conclusive against Judge Sanborn's position, that the text-book authorities put clause "c" to quite different uses:   see Collier, Bankruptcy, 9th ed., 161-162; Brandenburg, Bankruptcy, 3d ed., secs. 152 (and note 13), 153.  And 2 Remington, Bankruptcy, sec. 2233, cites clause "c" for the proposition that "the trustee elected by the partnership creditors

becomes, by virtue of his office, trustee of each of the individual estates of the several partners,"—which is little more than a quotation of the statute. Also, the text of Loveland, Bankruptcy, 3d ed., 303, sec. 98, does nothing more than to quote the statute, though it cites in the notes a decision opposed to the ruling in the *Bertenshaw* case.

In the criticism of the majority opinion's discussion of special clauses of section 5, I have refrained from quotation of the opinion, merely referring thereto, in order to save space and because, as will presently be seen, this criticism plays but a minor part in my decision; it would not be ventured at all, except that I do not endorse the entire course of reasoning even of an opinion which has probably done more than any other to place the entity doctrine upon a firm, and it is to be hoped, final basis. The majority opinion, in spite of its above noted misconceptions, as I respectfully deem them, and in spite of the very able and useful dissent of Judge Hook, has given a severe blow to a theory contra, which had the distinguished support of Judge Lowell. *In re Forbes,* 128 Fed. 137, 11 Am. B. R. 787.

And, also, despite the foregoing minor criticisms, Judge Sanborn firmly establishes his court's ruling by pointing out the principle that the trustee has title to nothing but the estate of the bankrupt, i. e., the partnership entity. 157 Fed. 368-369, 371-372, 19 Am. B. R. 584-585, 588-589, and by showing the significant omission, from the new act, of the provision of the corresponding section, 36, of the act of 1867, 14 Stat. 534, Rev. Stat. sec. 5121, that "all the joint stock and property of the copartnership and also *all the separate estate of each of the partners* shall be taken and administered," 157 Fed. 374, 19 Am. B. R. 592; and also, by reciting as a reductio ad absurdum the parallel case of a surety,—for, as the surety of an insolvent principal cannot be brought into the bankruptcy of that principal, neither can the non-bankrupt partners here, who are "to

a limited extent . . . sureties for the debts of the partnership," 157 Fed. 368, 371, 19 Am. B. R. 584, 586, be drawn into the bankruptcy of their firm. Or, in other words, the analogy is perfect between the surety of a bankrupt principal on the one hand and on the other the firm members, who in the language of the Scots law (whereunder the firm is an entity, the same as under this act) are "cautioners for the company rather than principal debtors," 20 Enc. Britt., 11th ed., 875, tit. "partnership," or, whose liability is, as stated by the Scotch commentator, "a *guarantee* by each to third parties of all the engagements legally undertaken in the social name," 1 Bell, Principles of the Law of Scotland, 9th ed., 242, sec. 351. And see adverse review of *In re Perley & Hays,* 138 Fed. 927, 15 Am. B. R. 54, in 19 Harv. Law. Rev., 615-616.

The language of the concluding portion of clause "c" is difficult to dispose of before reaching the result of the majority opinion in the *Bertenshaw* case, but it must be disposed of; and this opinion, notwithstanding its admirable dialectic qualities, is weakened by its failure to discuss a provision of the statute affording probably the most cogent basis for an argument in support of the drawing of the estate of every individual partner in all cases into the administration in a firm bankruptcy. The language referred to is: "The court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction . . . of the administration of the partnership and *individual property.*" My conviction is that this provision applies solely when the partner is drawn into the administration, either because he is personally subject to adjudication, or, perhaps, because he consents,—for mere consent would not give jurisdiction without some underlying authority to take jurisdiction, wherefore, for one reason, the enactment of this provision of clause "c". And attention is directed to the significance of the use, in this clause, of the potential mood and the auxiliary verb "may," instead of the indica-

tive mood and the auxiliary verb "shall;" for surely if the administration of a partner's estate is independent of his solvency or insolvency, the indicative mood would seem to be absolutely required. Administration of the individual property was not inevitable, or the word "may" would not have been used. It must be confessed, though, that the words "individual property" are here ambiguous and their effect not carefully thought out by the lawmakers. See 20 Harv. Law Rev., 591. But, apart from the merit of such an argument from the use of the potential mood, it may suffice to suggest in brief outline a few less technical and perhaps more practical considerations which, though indirect, outweigh, to my mind, the more direct force of the words "and individual property," standing alone in this clause and possibly seeming to call for the administration of such individual property in any and every case of a partnership bankruptcy.

A comparison of the former act with the present act, is helpful to a view of things in their true light. There has already been noted, as having been emphasized by Judge Sanborn, the signal omission from the act of 1898 of the provision of the act of 1867 for administration of both firm and individual estates in a partnership bankruptcy.

It may now be noted, too, that the provisions of the act of 1867 applied only to individual partners who were insolvent, and were so found in the firm proceeding, inasmuch as the firm could be adjudged bankrupt only upon the insolvency of all its members. Parsons, Partnership, 4th ed., 479, sec. 385. See *In re Penn*, 19 Fed. Cas. 151, 154, No. 10, 927, 5 Ben. 89, in which Judge Blatchford holds, or implies, that all the partners should be adjudged bankrupt. See also, as suggestive, *In re Burton*, 4 Fed. Cas. 863, 865, No. 2,214, 9 Ben. 324, *In re Bennett*, 3 Fed. Cas. 209, 210, No. 1,314, 2 Lowell, 400, and Lowell, Bankruptcy, sec. 119. This is the strongest kind of an argument to support the majority opinion in the *Bertenshaw* case, that the trustee

of a partnership has no title or right to the estate of the non-bankrupt partner and that the court of bankruptcy can give him none. The estates of solvent partners could not, ex natura rei, be administered under the former act. And does the mere change from the "aggregate" doctrine to the entity doctrine require or even permit the administration of such estates against the will of the solvent owners? The creditors, under the entity doctrine, have all the remedies to be justly expected from the courts under the statute, unless the courts are themselves to legislate,—for some cases of which, on this very subject, there has been severe criticism. 20 Harv. Law Rev. 595, 600.

If it be said, as one court declares, *Francis v. McNeal,* 186 Fed. 484, 26 Am. B. R. 559, and as Judge Hook, dissenting in the *Bertenshaw* case, 157 Fed. 376, 19 Am. B. R. 595-595, suggests, that it is not to be supposed that bankruptcy, a remedy of creditors as well as of debtors, was to lose its remedial efficiency, upon our discarding the old theory for the new entity doctrine, it may be replied, that under the old law all the members could be reached, as the almost unexceptionable rule at least, only when all the members were insolvent, but that now under the new law the very same thing can be done under the very same condition of universal insolvency and, in addition, the courts can reach the firm as an entity if it has jurisdiction of only one member, —which is one phase of the application of the above discussed clause "c." See *In re Dunnigan,* 95 Fed. 428, 2 Am. B. R. 628, reflecting the practice under the former statute: see *In re Bertenshaw,* 157 Fed. 372, 19 Am. B. R. 589. The certainty may be observed here, in passing, that Congress adopted the entity principle in order to remove some weakness of the former law, to supply something which should give the creditor a more direct, speedy, and effective remedy against the firm and its members.   2 Sutherland, Stat. Constr., 2 ed., sec. 471. The defect in view would seem to

be, that as a rule at least, under the former law the creditors could, as just suggested, do nothing with the firm unless or until they could get every single member into court or unless every single member was bankrupt. The attendant difficulties may be imagined. See, e. g·, *In re Meyer,* 98 Fed. 976, 979-980, 3 Am. B. R. 559, 563.

In Judge Hook's dissent, 157 Fed. 376, 19 Am. B. R. 595, so much is made of the matter of discharge as determinative of the question, as to call for a caution against surprise at any discovery of the new statute's incapability of wholly harmonious or absolutely consistent application. Too much should not be expected of the entity doctrine, nor should there be any felt necessity of working the doctrine to extremes or holding· it up to impracticable tests. Thus, for a very extreme instance, the entity doctrine is not to fail because of the fact that·the court cannot send the entity to jail for contempt. It must·be remembered, too, that the entity status was created for benefit ·of creditors as well as of debtors,—and creditors are not necessarily concerned with the debtor's discharge, while, in any event, all natural insolvent parties ultimately liable or liable as sureties, guarantors, or cautioners, i. e., the firm members, may have their discharge for the trouble of submitting to bankruptcy administration. This matter of discharge has proved somewhat of a stumbling block in another case. *In re Forbes,* 128 Fed. 137, 139-140, 11 Am. B. R. 787, 790.

Finally, the essential purpose of bankruptcy should have great weight in the determination of the question. That purpose is, not to get satisfaction of the creditor's claims, but to take out of the hands of the dishonest or inefficient insolvent debtor a business or an estate going bad and likely to go from bad to worse,—a business or an estate equitably charged with these claims,—and to conserve it and the debtor's assets with the view of an ultimate division among the claimants pro rata. A solvent partner, on the other hand, is in quite different case; his financial condition is

presumably not becoming shaky; the creditors are presumably in no danger of losing or of seeing impaired the security of their legal claims against him, against whom and whose property they still continue to have ample remedies. There is no need of the court's taking his property out of his hands and placing it in the hands of a trustee, and no reasonable hope of a trustee's being able to manage it any better in the interests of creditors. But this consideration is based, not so much on any regard for the solvent partner of a bankrupt firm, though he is entitled to regard, as upon a sense of the creditors' obligation to exhaust their ample ordinary remedies against such partner so far as they may choose to look to him at all. The majority opinion in the *Bertenshaw* case may lean toward this view, but is hereinabove criticised for going too far in the interest of the solvent partner, even to the extent of giving to him the administration of the insolvent firm's estate. 157 Fed. 369, 19 Am. B. R. 583.

The views of Professor Brannen are added by reference and adopted as my own. 20 Harv. Law Rev. 594-597, 598-603.

[4]   Before leaving this subject, it is worth while to, independently, dispose of two leading decisions which might be cited in support of my order for the schedules of all partners, *In re Ceballos,* 161 Fed. 451, 20 Am. B. R. 467, and *In re Solomon & Carvel,* 163 Fed. 140, 141, 20 Am. B. R. 488, 490. These decisions are founded on General Order viii of the Supreme Court, 172 U. S. 655, 89 Fed. vi, Collier, Bankruptcy, 9th ed. 1058-1059. But, on reflection and by reason of considerations already suggested, this general order would seem to be without authority, so far at least as applying to any other firm member than one adjudicated bankrupt in a partnership bankruptcy. The only arguable basis therefor apparent in the statute is clause "c" above discussed, providing that, "The court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of

all the partners and of the administration of the partnership *and individual property.*" So far as concerns any power to make rules, derived from section 2, clause 15, of the act, 30 Stat. 546, as a basis for the possible wide scope of this General Order, it is to be observed that the power to made rules is not the power to legislate: rules may enforce the statute but not enlarge it. And so far as concerns any policy of liberal construction to effect the remedial purpose of the act, it is not to be overlooked that to construe liberally is not to read into the statute something which its own terms do not clearly express or imply. See Collier, Bankruptcy, 9th ed., 572-573, and notes; 1 Remington, Bankruptcy, sec. 26; Anderson, Law Dic., 911-912, tit. "rule." It is likely that the Supreme Court in General Order viii has followed too closely General Order xviii of the law of 1867. See Collier, Bankruptcy, 9th ed., 1058, note; 20 Harv. Law Rev. 591.

[2b] Now, as regards the jurisdiction given by the act over "individual property:" we cannot predicate upon clause "c" of section 5, or any other apparent provision of the act, a power to require schedules, any more than we can predicate thereupon a power to require the solvent partner to turn over to the court for administration those individual assets and and liabilities of his own which his schedules would disclose. While the power to require schedules, and the advantages to the creditors of having schedules, might exist independently of the existence of any power to require the solvent partner to turn over his assets for administration, nevertheless inasmuch as the trustee has under the act no right or authority that has been discovered, for proceeding in any way against the solvent partner or the solvent partner's property, I fail to see any reason for the requirement from the partner of schedules of matters with which the trustee has, thus, legally not the slightest concern.

If, as is the law, the trustee has no control over the property of the non-bankrupt partner and, as would seem

on principle, no right to sue such partner on account of his individual liability to the creditors, why require schedules? The creditors have, still, the right to look to the solvent, or to the non-bankrupt, partner for satisfaction, and strictly they would seem to be the only ones who can sue such partner on his liability. Judge Sanborn and Professor Brannen before him have pointed out the availability and efficiency of the creditors' common remedies, so well as to make undesirable anything more than a mere reference to their discussions, and so well also as to dispel all fears and all considerations of policy in the interest of creditors as against the liable individual partners and their personal estates. 157 Fed. 368, 369, 19 Am. B. R. 584, 585; 20 Harv. Law Rev. 595, 596. See, also section 16 of the act, 30 Stat. 550, by which the individual partner's liability as a surety or "cautioner" would be preserved even after the discharge of the bankrupt firm.

And it is suggested, though by no means a conclusive point, that while the court requires the bankrupt firm or a bankrupt member to file schedules as of the date of the filing of petition (see *In re Harris,* 2 Am. B. R. 359, 363; act, sec. 1, clause "10;" see, also, act, sec. 70, clause "a"), yet thereafter the court has no concern with the bankrupt's assets or liabilities, the bankrupt being freed from all liabilities of subsequent incurrence, subject always, of course, to the consummation of his discharge, act, sec. 14, clause "a." But with the non-bankrupt partner, the case is quite different: the liability which would bring him into the bankruptcy proceeding at all, his so-called in-solido liability, continues even after the basic date, so that from him schedules would ever be called for with every change of his financial condition. Such difficulty or inconsistency may not be crucial, however.

Although not directly involved, there must be disposed of in advance any argument that, as the in-solido liability of the partners is one of the "resources"—I do not recall

having seen them described as "assets"—of the firm, from which the trustee can realize by suit if necessary, therefore he and the court in bankruptcy are entitled to such knowledge of the nature and condition of each partner's estate as the schedules would afford. The decisions in *Dickas v. Barnes,* 140 Fed. 849, 851, 15 Am. B. R. 566, 568, and *In re Junck & Balthazard,* 169 Fed. 481, 484, 22 Am. B. R. 298, 302, declare this personal liability to be a "resource" of the firm; and Professor Brannen observes that "under an ideally developed entity theory of partnership, the partners would be looked upon as contributories bound in virtue of the partnership relation to contribute to the firm, in case of its insolvency or bankruptcy, enough to make up any deficiency in partnership assets to pay firm debts," and that "the trustee as the representative of the firm in bankruptcy would then be entitled to sue the partners for such contribution." "But," he continues, "the enactment by Congress of a provision for adjudication of the firm as bankrupt cannot change the nature of the partner's liability. That is fixed by the law of the States and remains the same, namely, an obligation directly to the creditors;" though he then says, "It might, however, seem dogmatic to assert that there could not also be, alongside of and in addition to the direct liability to the creditors, another liability to the firm, enforceable in case of the insolvency or bankruptcy of the firm—a liability to contribute to the payment of debts after the exhaustion of the partnership assets,—but no direct authority has been found." 20 Harv. Law Rev. 603. [Set *Selig v. Hami Hon,* 234 U. S. 652, 661, par. "(1)".]

This may all be true,—as no denial is here called for,—and yet it is hard to see how any such consideration would give the court the right to require from a non-bankrupt or solvent partner who at best under this theory of entity is merely debtor to the firm, a disclosure such as the schedules would afford of intimate details of his personal business affairs. The unreasonableness and injustice of such require-

ment of schedules and, a fortiori, the oppression and un-called-for injury from a seizure of his property and the administration of his personal estate, all against his will, are so apparent as to need no further discussion.

The most that could be predicated of this in-solido lia-bility as a "resource" of the firm upon which the trustee could realize, would seem to be a right in a court of equity to an accounting from the individual partners; and, in this connection, Professor Brannen has a suggestion which it may be pardonable to note in anticipation as worthy of con-sideration, though he is obviously indicating what "the court should have jurisdiction to order," rather than what the court has jurisdiction to order. See 20 Harv. Law. Rev. 603-604, citing *Jordan v. Miller*, 75 Va. 442, 454, a suit for dissolution of partnership and for an accounting, wherein each partner was ordered to contribute pro rata towards the deficiency resultant upon application of firm assets to firm debts. Whether this court as a court of bankruptcy has it-self any such equity powers, the narrow limits of the point under discussion do not require me, nor am I quite prepared, to determine here,—though confessing doubt of the posses-sion of those powers by a court of bankruptcy as such, what-ever be the soundness of any possible suggestion that the trustee may have a remedy in State or Territorial, as distin-guished from Federal, equity courts.

Wherefore, let the order herein made requiring schedules from the non-bankrupt partners, be set aside. In view of the fact that these partners, of the Oriental laboring class, ignorant of our laws and even of our language, have been better advised than the court in this matter of schedules, no order will be made citing them for contempt for their delinquencies or even for their disregard of what until now stood as the court's order, and until now appeared to re-quire from them obedience and respect,—and probably no such citation could be made consistently with my ruling herein. See *In re Sawyer*, 124 U. S. 200, 221-222, and note

dissent of Waite, C. J., at 223; 7 A. & E. Enc. L., 2d ed., 56-57.

Since the firm adjudication, the partner Lau Chung has presented to the clerk of court for filing, his separate petition for adjudication as an individual, with schedules in due form.

[3a]   The question, then, arises, whether these partners who desire to be adjudged bankrupt may be so adjudged in this partnership proceeding, and, also, the incidental question raised by the clerk, whether separate costs and fees are to be paid by each bankrupt partner.

Although the courts are not entirely agreed, as to whether a firm should be adjudged bankrupt without adjudication of all its individual members: Collier, Bankruptcy, 9th ed., secs. 147, 148, 152, 158, and notes; 1 Remington, Bankruptcy, secs. 60, 61; 3 Id. sec. 60; *Mills v. Fisher*, 159 Fed. 897, 899, 20 Am. B. 237, 239, Lurton, Circuit Judge; *In re Forbes*, supra, Lowell, District Judge; yet apparently no court holding a firm to be subject to adjudication without adjudication of its members, would deny that, in a firm proceeding, all the partners or any partner might also be so adjudged. 1 Remington, Bankruptcy, sec. 64; *In re Springer*, 199 Fed. 294, 298, 29 Am. B. R. 96, 100-101.   There seems to be no reason why those members who here appeared in response to summons and then in open court asked to be adjudicated, should not be granted that privilege in the firm proceeding.  An order to that end would, really, amount to nothing more than an amendment of the petition, which unquestionably could be granted, by way of allowing the prayer to include not only the firm but its members.   See General Order xi, 172 U. S. 657, 89 Fed. vii.; Collier, Bankruptcy, 9th ed., 21, par. "b;" Fletcher, Eq. Pr., secs. 53, 378; Story, Eq. Pl., 10th ed., sec. 884.  Such an order would facilitate the administration.  To that end the member's voluntary surrender of his assets should be encouraged.   It is, surely, within the broad equity powers of a court of bank-

ruptcy, with reference to practice, to so order. See Collier, Bankruptcy, 9th ed., 21-22. Another reason for this view is that, in my opinion, as above intimated, the estate of the individual partner who is adjudged insolvent, or who consents, may be drawn into the administration of the firm's affairs. Moreover, even if the individual adjudication be an entirely separate matter from the firm adjudication, still the two proceedings could properly be consolidated. See Lowell, Bankruptcy, sec. 119. So that to raise objections to the adjudication of the member in this proceeding would be to "strain at gnats." His adjudication is only a helpful circumstance and quite proper in the present proceeding.

The partner Lau Chung may, therefore, be adjudged bankrupt in the firm bankruptcy. Let his petition be filed herein. As to the other partners who at the hearing expressed the desire to be adjudicated, an adjudication will be made herein upon their filing forthwith their separate petitions with schedules in due form. See Collier, Bankruptcy, 9th ed., 144, par. "b." Each such petition should be entitled, as the major title at least, in the matter of the individual partner himself and not in the name of the firm; in order, partly, to insure or facilitate notice to the creditors of the partners as distinguished from the creditors of the firm, and the clerk, referee and trustee will see that all notices to the partners' individual creditors are entitled accordingly. See *In re Gorman,* 2 U. S. Dist. Ct. Haw. 439, 15 Am. B. R. 587.

[3b] On the question of the necessity of separate costs and fees in case of each partner adjudged bankrupt, the courts are, also, divided. 1 Remington, Bankruptcy, sec. 289 and note 165; Collier, Bankruptcy, 9th ed., 682-683 and notes. With the most fully considered decision, however, *In re Barden,* 101 Fed. 555, 4 Am. B. R. 31, I do not agree. Here, again, are plausible considerations of policy invoked to sustain a ruling and, more erroneous, the seizing upon minor details of the statute and emphasizing them beyond any dream of the law-maker. From a single instance, of

the use of the word "estate," an argument is built up of what the law possibly ought to be, rather than of what it actually is. It requires something more than the mere use of the word "estate" in one single place in the statute,—and that not the first place, providing for fees, where, if this word were so important, its use would naturally have been called for,—in order to support the conclusion reached by the court in the *Barden* case. Why should the law-makers have been so careful to use the word "estate" in case of the clerk, act, sec. 52, clause "a," while using only the colorless word "case" with reference to the referee (act, sec. 40, clause "a"), and the trustee (act, sec. 48, clause "a"), the duties of each of whom are far more onerous and responsible than those of the clerk whose duties are largely routine,—the duties of referee and trustee often calling for a high degree of initiative, discretion, and good judgment?

And the fact, as it seems, that no such double fee system was provided or in operation under the act of 1867, even when all the partners were, as a rule, adjudged in one proceeding, may be worthy of consideration in this connection. See Rev. Stat. sec. 5124; Id. sec. 5121; G. O. Supreme Court, Oct. Term, 1874; Bump, Bankruptcy, 9th ed. 868-871; Id. 785-788.

The rulings in the cases of *In re Langslow*, 98 Fed. 869, 3 Am. B. R. 529, note, and *In re Gay*, 98 Fed. 872, 3 Am. B. R. 529, though barren of discussion are, in my opinion, sound, and the fully considered ruling in the *Barden* case, and in the case of *In re Farley*, 115 Fed. 359, 8 Am. B. R. 266, which follows it, unsound. It is therefore held, that separate costs and fees need not be paid by each involvent partner who is adjudged bankrupt in this proceeding and whose estate is drawn herein for adjudication with the estate of the firm; except, however, for the requirement from each such partner of a deposit of the customary amount to cover costs of advertising notices to his individual creditors,—such expense being not, of course, cov-

ered by the deposit already made for advertising notices to the firm creditors. But, in order that this advantage may be enjoyed, the petition and schedules of each partner must be filed herein forthwith.

In conclusion, if any excuse for the length of this opinion be in order, it must be assigned to the unsatisfactory state of the precedents, and if any excuse for that unsatisfactory condition be desired, then, the discriminiating Professor Brannen may again be quoted: "But the possibility of finding such apparent contradictions between different clauses of the section [act, sec. 5], as well as the reenactment by section 54 of the old rule of distribution of the partnership and individual estates, indicates that the scheme of treatment of partnerships in bankruptcy was not fully thought out by the draftsmen to its logical conclusion. The theory was a new thing, and the changes necessary to the application of the theory seem not to have been carefully considered." 20 Harv. Law. Rev. 591. And another, and earlier, commentator in the same publication, 19 Harv. Law. Rev. 615-616, observes justly, "This unwarranted result of administering in a firm proceeding the estates of non-bankrupt partners indicates a failure to appreciate fully the legislative innovation in partnership law, and shows an unconscious adherence to the older law."

Surely, a statute lending itself to such differences of opinion—differences both major and minor and of all degrees—and to such varied construction by men so learned and experienced as the differing judges, calls loudly for amendment. It is not fair, that the courts should be put to such vast but preventable labor as a conscientious judge feels obliged to give to a case like the present.

---

*Reported,* 30 Am. B. R. 133. *Overruled,* as to question of administration of individual estate in firm proceeding (syllabus, par. 2, supra): *Francis v. McNeill,* 228 U. S. 695, May 29, 1913.